OPINION OF THE COURT
Fuchsberg, J.
Merrick Holding Corp., the owner of land improved by a 29- *541 store shopping center complex in Nassau County, brought this consolidated certiorari proceeding to review the amount at which the property was assessed for the 1968-1975 tax years. The valuation had been arrived at by the income capitalization method. However, instead of accepting actual rental income as a basis for its computations, the county’s board of assessors first increased it by amounts, termed "leasehold bonuses”, which reflected the difference between the rentals payable to Merrick under long-term leases with three major tenants and the appreciably higher market rental value of the leased spaces. The dispute between the parties focused on the validity of these add-ons.
Special Term, though decreeing some reductions on the basis of other issues not here relevant, upheld the application of the leasehold bonuses and entered judgment accordingly. But the Appellate Division, pointing out that the county’s appraiser had conceded that the three leases "were 'not necessarily improvident when they were made’ ” and taking the view that, without proof of improvidence, it was "improper to apply the leasehold bonus principle to a selected portion of leases in a shopping center in the absence of [undefined] special circumstances”, reversed on the law and remanded for a new determination (58 AD2d 605, 606). On remand, Special Term, then granted the taxpayer’s motion for summary judgment, eliminated the add-ons and entered a new judgment reducing the assessment correspondingly. On the county’s appeal to us,* we now conclude that the order of the Appellate Division should, in turn, be reversed and the matter remitted for review of the facts. Our reasons follow.
The command of section 306 of the Real Property Tax Law that all property be assessed at full value does not pronounce an inelastic approach to valuation. Nor does the legislative directive specify a particular method for establishing value. And courts, being under no compunction to do so, have not confined assessors to any one course. To ensure that the existence of varied and multifaceted patterns of land use and ownership does not frustrate the design that each contribute equitably to the public fisc, courts have upheld any fair and nondiscriminatory method that appears most likely to achieve that end (see Blooming Grove Props, v Board of Assessors of Town of Blooming Grove, 34 AD2d 953; cf. Matter of Heller *542 stein v Assessor of Town of Islip, 37 NY2d 1, 4-5; People ex rel. Jamaica Water Supply Co. v State Bd. of Tax Comrs., 196 NY 39, 51-53).
Thus, though commonly the most accurate standard is provided by the sales prices of comparable properties located within the same or similar competitive area in which a parcel being assessed is located, in the absence of sufficiently reliable market data, alternative methods, such as income capitalization or, where necessary, reproduction cost, may be employed (Matter of City of New York [Salvation Army], 43 NY2d 512, 515; Matter of Great Atlantic & Pacifíc Tea Co. v Kiernan, 42 NY2d 236, 240). Not surprisingly, as to income producing property, income capitalization has been the preferred mode (1 Bonbright, Valuation of Property, p 216; see Caroldee Realty Corp. v Board of Assessors of County of Nassau, 73 Misc 2d 41 [shopping center]; Roosevelt Nassau Operating Corp. v Board of Assessors of County of Nassau, 68 Misc 2d 183 [shopping center]).
Consequently, the board’s employment of income capitalization rather than cost or market in the present case was not exceptional (see, generally, Graham, Market Valuation of a Regional Shopping Center, 32 Appraisal J 589). But the appropriateness of this method does not take away from the reality that its application, calling as it does for the exercise of judgment by the appraiser, furnishes, at best, no more than an estimate of the present worth of the benefits to be reaped from the property at issue (1 Bonbright, Valuation of Property, p 218). The goal at all times remains full value. To that end, assessors may devise reasonable methods that assure that the income they accept as the basis for capitalization is as close a reflection of true value as possible.
Our recent holding in G.R.F., Inc. v Board of Assessors of County of Nassau (41 NY2d 512) reflects this flexible approach to problems of valuation. Having found that the circumstances warranted no hard and fast choice between a strict income capitalization approach and one based on cost of reproduction, we there emphasized that "[p]ragmatism * * * requires adjustment when the economic realities prevent placing the properties in neat logical valuation boxes” (G.R.F., Inc. v Board of Assessors of County of Nassau, 41 NY2d 512, 515, supra).
In short, categorization must yield to more exact means of arriving at value. Since other factors may tend to qualify the *543 reliability of actual income as a sole measure of value, the per se rule articulated by the Appellate Division, which would interdict them, must be rejected. For, though realized income will often turn out to be the surest indicator of full value (see Rockaway Crest Section 1 v Tax Comm. of City of N. Y., 38 AD2d 759; People ex rel. Gale v Tax Comm. of City of N. Y, 17 AD2d 225, 230), when fair market rents exceed rental income the latter may, in whole or in part, be made to defer to more precise means of fixing a base on which to compute capitalization (see Encyclopedia of Real Estate Appraising [Friedman ed, 1968], pp 40-41; 1 Bonbright, Valuation of Property, p 229; see Babcock, The Valuation of Real Estate, pp 384-385).
So, if examination discloses that rent has been arbitrarily set without regard to the market rental value whether through self-dealing, as, for example, where a landlord and tenant are business affiliates or property is owner-occupied (Woolworth Co. v Commission of Taxation, 26 AD2d 759), or, certainly, where there is any indication of collusion, the rent arrangement will be of little, if any, guidance to sound appraisal.
On the other hand, in arriving at their valuations, assessors may always consider below market rents that result from arm’s length bargaining carried out in good faith. Courts recognize, however, that reliance on contract rents, particularly those involving property subject to below market long-term leases, may yield distorted valuations and that an assessor, therefore, may apply compensatory measures calculated to adjust such income figures to a point at which they become reliable indicators of full value (see People ex rel. Gale v Tax Comm., 17 AD2d 225, supra; Westbury Drive-In v Board of Assessors of County of Nassau, 70 Misc 2d 1077, affd 45 AD2d 821; Matter of Ernst v Board of Assessors of City of Lockport, 58 Misc 2d 504, affd 33 AD2d 655). It was permissible, therefore, for the board of assessors here to try to accomplish that by tempering its use of rental income with leasehold bonuses in amounts representing the differential between the actual rent and the market rent for each of the three stores in question.
In doing so, the board fulfilled its obligation to assess Merrick’s shopping center at full value undiminished by the leases by which the property was burdened. Put another way, all the interests in the property save those assessed sepa *544 rately, such as easements, were to be treated conceptually, for real estate tax purposes, as a single "bundle of rights” (Encyclopedia of Real Estate Appraising [Friedman ed, 1968], p 133). Presumably, to the extent that any of the center’s leases called for below market rents, that fact would be reflected in a lower value of the landlord’s interest and a correspondingly higher value of the tenants’ interests (1 Bonbright, Valuation of Property, pp 495-497). The leasehold bonuses added by the county were designed to take into account the value deriving from the tenants’ interests — a component of full value that it found did not emerge from actual income figures supplied by the landlord. The utilization of a single assessment encompassing both interests, with the tax payable entirely by the landlord, is consonant with this underlying unitary concept of value.
The net result is that a landlord, despite low income occasioned by below market leases, nevertheless remains obligated to pay taxes on the market value of the property taken as a whole. At first blush, this may appear to penalize the unsuccessful entrepreneur for a lack of business acumen. But it must always be remembered that an underlying aim of valuation is to assure that, in providing for public needs, the share reasonably to be borne by a particular property owner is based on an equitable proportioning of the fair value of his property vis-á-vis the fair value of all other taxable properties in the same tax jurisdiction. Otherwise, the landlord who fails to realize the fair potential of his property would, in effect, shift part of his tax burden to the shoulders of his fellow taxpayers.
We recognize that when it developed its shopping area in 1952 and 1953, Merrick may have been required to grant bargain leases to induce nationally known tenants to locate in its center in the expectation that higher rents could be exacted from smaller stores eager to profit from the greater number of patrons the "flagship” stores would draw (see G.R.F., Inc. v Board of Assessors of County of Nassau, 41 NY2d 512, 514, supra). Each of the three key tenants — Food Fair, F. W. Woolworth and National Shoes — is a retail chain organization commanding ready recognition from members of the consuming public. Their leases (and that of one other tenant), in the aggregate, embrace fully 45% of the desirable street level shopping center store area. Besides providing for low rents, the leases negotiated between the three tenants and Merrick lacked escalation clauses affording meaningful protec *545 tion to the landlord against tax increases or other contingencies. It is not surprising then that the proof showed that during the tax periods in question each of these tenants were paying, for other comparable space in the same county, a prevailing price nearly twice as much.
The fact remains that the advantageous leases were yielded to the three tenants with the landlord’s eyes open and no doubt directed towards its own short or long-range profit. The county was not a party to these plans; nor was it, or is it, a coentrepreneur who was required to share in Merrick’s good or bad fortune. Clearly, the county tax authorities need not depend for valuation purposes on the uncertain results of managerial banes or boons.
For all these reasons it cannot be said that the board’s use of leasehold bonuses was inappropriate. Of course, in arriving at the value of the entire property, if Merrick’s leases with its lesser tenants were at above market rents these should be offset against the below market rentals received from the three flagship tenants. In that connection, in remitting for review of the facts we note that, though the record contains proof that the rentals paid by Merrick’s numerous lesser tenants were not below market, there is no finding as to whether these exceed market and, if so, the extent to which such excess counterbalanced the below market stream of income that flowed from the three major leases to which the bonuses were applied.
Accordingly, the judgment appealed from and the order brought up for review should be reversed and the matter remitted to the Appellate Division for further proceedings as provided by CPLR 5613.
Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur with Judge Fuchsberg; Chief Judge Breitel concurs in result and so much of the opinion as states the rule that the county is entitled to assess the full value of the property regardless of whether the property is burdened by disadvantageous leases.
Judgment appealed from and order of the Appellate Division brought up for review reversed, with costs, and the matter remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.

 Pursuant to CPLR 5601 (subd [d]), the county’s present appeal from this latest judgment now brings the Appellate Division’s nonfinal order up for review.