[No. 49266–2.   En Banc.   July 26, 1984.]

DUWAMISH WAREHOUSE COMPANY, *Appellant,* v. HARLEY H. HOPPE, *Respondent.*

*Skeel, Henke, Evenson & Roberts,* by *Eric Richter,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William C. Severson* and *Sandra L. Cohen, Deputies,* for respondent.

ROSELLINI, J.—Duwamish Warehouse Company appeals the trial court's summary judgment affirming the King County Assessor's valuation of private lessee's improvements on leased public land. We reverse.

## FACTS

The taxpayer, Duwamish Warehouse Company (Duwamish), is the lessee of certain lands from the Port of Seattle (Port). The property at issue is a warehouse building constructed by Duwamish on the leased property. The term of the ground lease is 26 years and is scheduled to expire in 1991. Under that ground lease, Duwamish was required to construct the warehouse. During the pendency of the ground lease, ownership of the warehouse is vested in Duwamish. Duwamish leases the main portion of the warehouse building back to the Port and the 1968 addition thereto to the Lockheed Shipbuilding Company. At the termination of the ground lease, ownership and possession of the warehouse building transfers automatically and without further consideration to the Port. The warehouse is

a permanent, fixed improvement on the land and has a useful life far longer than the term of the lease. The Port insures the subject building. If the building burns, the Port has the election to rebuild or not. If the Port were to elect not to rebuild, the Port collects the insurance proceeds less only the lessee's unamortized costs.

While the structure of these lease arrangements is somewhat complex, the effect, for purposes of taxation, is fairly straightforward. The rent paid by Duwamish to the Port under the ground lease is subject to the leasehold excise tax under RCW 82.29A. No rent is paid by Duwamish for the warehouse building, and the building is not defined as "contract rent" for purposes of RCW 82.29A.020. Rather, under RCW 82.29A.160, the improvement is separately assessed and valued by the King County Assessor under RCW Title 84. The assessor valued the warehouse for Title 84 property tax purposes at its full market value, without consideration of the Port's reversionary interest.

## ISSUE

Whether the publicly owned reversionary interest is a factor which the assessing officer must consider in determining the true and fair market value of the taxable private interest in a permanent improvement on leased public land.

## DECISION

A proper resolution of the valuation question before the court requires an understanding of the historical background of the applicable statutory provisions. Const. art. 7, § 1 provides, in part, that "[p]roperty . . . of the state, counties, . . . and other municipal corporations . . . shall be exempt from taxation." In 1906, the taxability of leaseholds of state–owned, tax–exempt land was presented to the court in *Moeller v. Gormley,* 44 Wash. 465, 87 P. 507 (1906). In an action to restrain King County from collecting personal property taxes on leasehold interests in state–owned, tax–exempt tidelands, the court held that under existing statutes, the leasehold was not taxable as personal property but was taxable as real property, subject to the

general rule of taxation. The court noted, however, that the then existing revenue law was probably inadequate to enforce tax collection when the leasehold of state–owned property was assessed as real property.

In response to *Moeller,* the Legislature in 1907 amended the statutory definition of personal property (now codified in RCW 84.04.080) for the purposes of taxation "to embrace and include . . . all leases of real property and leasehold interests therein". *See Pier 67, Inc. v. King Cy.,* 78 Wn.2d 48, 53–54, 469 P.2d 902 (1970), *cert. denied,* 401 U.S. 911 (1971). Until 1970, leasehold interests in public property were valued for property tax purposes according to a set of standards developed from four early court decisions commonly referred to as the *Metropolitan Building Company* cases. *See Metropolitan Bldg. Co. v. King Cy.,* 62 Wash. 409, 113 P. 1114 (1911); *Metropolitan Bldg. Co. v. King Cy.,* 64 Wash. 615, 117 P. 495 (1911); *Metropolitan Bldg. Co. v. King Cy.,* 72 Wash. 47, 129 P. 883 (1913); *In re Metropolitan Bldg. Co.,* 144 Wash. 469, 258 P. 473 (1927). These standards provided that in determining the taxable value of leasehold interests, rents reserved and mortgage indebtedness were to be deducted from the fair market value of the leasehold.

*Pier 67* overturned these standards and held that under RCW 84.04.080, which provided that leasehold interest and improvements on state–owned, tax–exempt land shall be taxed as personal property, the proper method of assessment is to determine the true cash value, or market value, of the leasehold using the same standards as for valuing taxable property in general. The court reasoned that ad valorem property taxes are primarily in rem in character and the "unit assessment" structure of valuation required inclusion of both the leasehold and the improvements to derive the value of the right to use the property over the period of the lease.

In *Clark–Kunzl Co. v. Williams,* 78 Wn.2d 59, 469 P.2d 874 (1970), we held that the authorization contained in RCW 84.04.080 to tax leasehold interests separately from

the fee applied only to leases of state–owned, tax–exempt land. Where private land is leased, the entire estate including the fee, the leasehold and any improvements thereon, is assessed and taxed as a unit with the burden of paying the taxes being a matter of contract between the lessor and lessee. The court additionally reaffirmed the holding of *Pier 67* that the valuation of leases of state–owned land required the primary lease and improvements be valued as a unit and not be separated into separate assessments.

> When the fee interest is privately owned, a single tax is imposed on the entire estate. When title to the fee interest is owned by the state, and therefore tax exempt and indefeasible by tax lien, the taxable possessory interest must be taxed separately. The imposition of the tax on the possessory interest is effected by making the lessee personally obligated to pay the tax. This statutory framework, however, does not intend to create the very complicated fragmentization which would arise if each of a myriad of subleases under a long–term lease of highly developed state owned land were to be separately assessed and taxed as a possessory interest. The unit assessment rule requires that a lease of state land must be assessed and taxed on the value of the primary leasehold as a unit.

*Clark–Kunzl,* at 64.

In summary, the holdings of *Pier 67* and *Clark–Kunzl* in regard to leaseholds of state–owned, tax–exempt land are: (1) under RCW 84.04.080, a permanent building erected by a lessee upon leased public property is taxable only as a lesser interest within the supporting taxable leasehold interest; and (2) valuation of the taxable leasehold (including the building) under RCW 84.40.030 should reflect the market value of the right created by the lease to possess the property for the term of the lease, without deduction for rent reserved or other associated costs.

While both *Pier 67* and *Clark–Kunzl* recognize that ad valorem property taxes are primarily in rem in character, they also recognize that the private possessory interest was not to be assessed a tax based upon the State's tax–exempt

interest in the property. The "unit assessment" rule under this tax structure was intended both to avoid fragmentation of the value of the leasehold among lessees and the sublessees and to arrive at a full and fair valuation of the primary leasehold interest. *Clark–Kunzl,* at 64; *Pier 67,* at 57–58.

In response to these holdings, the Legislature enacted the exemption (RCW 84.36.451) and the "in lieu" excise tax for leases of public land (RCW 82.29A).

Under the new tax structure, these cases retain validity only insofar as they prohibit fragmentation of value between private lessor/lessee property interests or between the lessees and sublessees of tax–exempt public property. The 1976 amendments were specifically intended to permit the assessor to tax separately any improvements on leased publicly owned lands. *Japan Line, Ltd. v. McCaffree,* 88 Wn.2d 93, 99, 558 P.2d 211 (1977). Accordingly, insofar as the older cases view improvements as simply part of the value of a leasehold of public property, those cases are not helpful.

■■ A more useful and simpler approach is to rely on ordinary rules of statutory construction. The most pertinent of those rules is that if there is any doubt as to the meaning of a tax statute, it must be construed against the taxing power. *Mac Amusement Co. v. Department of Rev.,* 95 Wn.2d 963, 966, 633 P.2d 68 (1981). Applying this rule, we must define the phrase "full and fair value of the property" when that phrase is applied to an improvement on publicly owned land. Ordinarily, full and fair value means the amount a willing buyer would pay a seller who is willing but not obligated to sell. *See, e.g., Carkonen v. Williams,* 76 Wn.2d 617, 458 P.2d 280 (1969). Where private land is leased, the willing buyer is contemplated to be purchasing the entire fee, including leasehold and improvements. *See Clark–Kunzl,* at 63. In the circumstances of state–owned interests in the land, however, the State's ownership interest cannot be purchased. Thus, a willing buyer would not logically pay a price for the entire fee. Moreover, when the

Legislature separated improvements as a taxable unit, it did not expressly state that the entire fee value of the improvement is taxable to the lessee. When there is doubt as to whether the Legislature intended to tax the fee value, the statute must be interpreted to tax only the limited interest in the improvement. The valuation standards for assessing leasehold interests in tax–exempt public land retains validity under the current taxing structure when assessing the value of an improvement with a tax–exempt character. *See Pier 67,* at 57–58.

This view is supported by case law from other jurisdictions. Two cases which address the standard for assessing leased public property, *Board of Supervisors v. Whittington,* 118 Miss. 799, 80 So. 8 (1918) and *United States v. Detroit,* 345 Mich. 601, 77 N.W.2d 79 (1956), *aff'd,* 355 U.S. 466 (1958) demonstrate the need for explicit legislative intent to tax the entire fee.

In *Whittington,* the Mississippi statute at issue provided:

All school lands . . . shall be liable . . . after the same shall have been leased, to be taxed *as other lands are taxed* during the continuance of the lease; but in case of sale thereof for taxes, only the title of the lessee or his assignee shall pass by the sale.

(Italics ours.) *Whittington,* at 800 (quoting Miss. Code of 1906, § 4289 (Hemmingway's Code § 6923)).

The Mississippi statute was interpreted in *Whittington* to prescribe an assessment to the lessee of the value of the land in fee through emphasis on the phrase, "taxed as other lands are taxed during the continuance of the lease", in the context of the explicit disjunctive clause limiting the interest which would pass by tax sale to the lessee's interest. Other land was taxed according to its value as land, notwithstanding contractual strictures, so leased school land would be taxed *as* other land would likewise be taxed, notwithstanding the strictures of the lease. This explicit statutory prescription is entirely absent from expression or implication in the Washington statutes at issue.

The Michigan statute at issue in the remaining case,

*United States v. Detroit, supra* at 603–04, was even more explicit in establishing an artificial "as if owned" standard for valuing leased public property:

"Sec. 1. When any real property which for any reason is exempt from taxation is leased . . . and used by a private individual . . . in connection with a business conducted for profit, . . . [it] shall be subject to taxation *in the same amount and to the same extent as though* the lessee or user were the owner of such property . . .

"Sec. 2. Taxes shall be assessed to such lessees or users of real property and collected *in the same manner* as taxes assessed to owners of real property, *except* that such taxes shall not become a lien against the property. When due, such taxes . . . shall be recoverable by direct action of assumpsit."

(Italics ours.) *Detroit,* at 603–04 (quoting Mich. Stat. Ann. §§ 7.7(5) and (6) (Cum. Supp. 1955) (Public Act 189 of 1953)). The Michigan Supreme Court sustained this tax "measured by the true cash value of the leased real estate" as "a specific tax on [the] privilege of using the property, which tax may, constitutionally, be measured by the full value of that property." *Detroit,* at 604. Again, this explicit language is absent from the Washington statutes.

The Washington Legislature has provided that noncontract rent improvements on public property are to be assessed in accordance with RCW Title 84. RCW 84.40.030 requires that the improvements be valued at their true and fair value. To disregard the fact that this building reverts to the Port at the end of the lease term, long before its useful life is up, would be to disregard a factor which plainly would affect the price negotiations between a willing buyer and a willing seller. The result is a nonuniform valuation much higher than the true and fair market value in money which the statute commands.

Because the reversion of the building to the public is a factor which must be considered in determining the subject building's assessable value, the summary judgment entered

by the Superior Court is reversed.

WILLIAMS, C.J., UTTER, BRACHTENBACH, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J. (dissenting)—The majority holds that the taxable value of a lessee–owned improvement on publicly owned land must be reduced to reflect the reversionary interest of the public lessor at the termination of the underlying ground lease. This decision effectively imposes an ad valorem property tax against the particular ownership interest in the property, rather than the property itself. This violates the express terms of the applicable taxing statutes and ignores established precedent. I dissent.

I

Duwamish Warehouse Company leases certain lands from the Port of Seattle. Under the lease agreement, Duwamish retains *ownership* of the subject warehouse building during the pendency of the lease. At the expiration of the ground lease, ownership and possession of the building, without further consideration, automatically reverts to the Port of Seattle. Duwamish pays no rent for the warehouse building, and the building is not defined as "contract rent" for purposes of RCW 82.29A.020. Under RCW 82.29A.160, the improvement is separately assessed by the King County Assessor pursuant to RCW Title 84. The only issue presented here is whether the Port's reversionary interest in the building must be considered in determining its value for taxation purposes under RCW 84.40.030.

II

In 1976, the Legislature adopted a comprehensive reform of public leasehold taxation by adopting the leasehold excise tax, now codified as RCW 82.29A. This statute substitutes a 12 percent excise tax on rent in place of any ad valorem property tax on public property leased for private

use. RCW 82.29A.030.[1] Duwamish pays no "taxable rent" for the improvement because it retains ownership of the warehouse during the pendency of the ground lease. Under RCW 82.29A.160, such improvements owned by the lessee "shall be taxable to such lessee or sublessee under Title 84 RCW."

It is undisputed that the warehouse here falls under this proviso and is taxable to Duwamish under RCW Title 84. The question is whether the taxable value of the lessee-owned improvement should be reduced to reflect the reversionary interest of the Port.

Under RCW 84.40.030, all property must be assessed at 100 percent of its true and fair value in money unless specifically provided otherwise by law. The majority holds the Port's reversionary interest in the warehouse must be considered in order for the assessor to accurately determine the building's "true and fair value in money," or "fair market value". Fair market value is the amount of money which a purchaser willing, but not obliged, to buy would pay an owner willing, but not obligated, to sell, considering all uses to which the property is adapted and might in reason be applied. *Carkonen v. Williams,* 76 Wn.2d 617, 458 P.2d 280 (1969). The majority argues that a buyer would consider reversion of the warehouse building at the expiration of the ground lease in determining what the building is worth.

This decision is grounded on a fundamentally incorrect premise. The majority states at pages 254–55:

> Moreover, when the Legislature separated improvements as a taxable unit, it did not expressly state that the entire fee value of the improvement is taxable to the lessee. When there is doubt as to whether the Legislature intended to tax the fee value, the statute must be interpreted to tax *only the limited interest in the improvement.*

---

[1]RCW 82.29A.030 provides in part:

"There is hereby levied and shall be collected a leasehold excise tax on the act or privilege of occupying or using publicly owned real or personal property through a leasehold interest on and after January 1, 1976, at a rate of twelve percent of taxable rent. . . ."

(Italics mine.) Both the Legislature and this court have explicitly rejected the proposition that ad valorem taxes are assessed against the taxpayers' interest in the property. RCW 84.40.030 provides in part:

> Taxable leasehold estates shall be valued at such price as they would bring at a fair, voluntary sale for cash without any deductions for any indebtedness owed including rentals to be paid.

Thus, the statute is clear that neither the owner's equity nor the existence of any encumbrance or competing interest in the property is relevant in assessing its objective value for purposes of taxation. We stated the principle simply and clearly in *Clark–Kunzl Co. v. Williams,* 78 Wn.2d 59, 63, 469 P.2d 874 (1970):

> Ad valorem property taxes are primarily in rem in character. The tax is imposed against the property itself, not against the owners of the various interests in the land.

In the present case, Duwamish retains full ownership interest in the warehouse building. Because no "contract rent" is paid for this improvement, it is taxable under the provisions of RCW Title 84. RCW 82.29A.160. Nothing in the valuation statute, RCW 84.40.030, suggests that the nature of the owner's interest in the improvement, or another party's subordinate reversionary interest are to be considered in determining the value of the warehouse itself. It is the market value of the building which is subject to the tax, not the market value of the owner's legal interest therein. The fact that a government entity will acquire title to the building at the term of the underlying ground lease is not relevant to the value of the building for taxation purposes.

## CONCLUSION

The majority, in violation of the clear and unambiguous language of the taxing statutes, arbitrarily and without justification gives the subject taxpayer a discount. This violates the fundamental constitutional requirement that

taxation be uniform. Const. art. 7, § 1 (amend. 14). I dissent.

DOLLIVER and DIMMICK, JJ., concur with DORE, J.

Reconsideration denied October 17, 1984.