[No. 50579-9.   En Banc.   October 2, 1986.]

ROBERT J. FOLSOM, ET AL, *Respondents*, v. THE
COUNTY OF SPOKANE, *Appellant*.

*Donald C. Brockett, Prosecuting Attorney,* and *Garald A. Gesinger, Deputy,* for appellant.

*Delay, Curran, Thompson & Pontarolo, P.S.,* and *Joseph*

*P. Delay,* for respondents.

PEARSON, J.—This case raises the principal issue of whether, in capitalizing income for ad valorem property tax valuation, the taxing authority should capitalize actual rental income reserved in a long–term commercial lease if the existing fair market rate exceeds rent reserved. We hold that it should, but remand the case for additional proceedings consistent with this opinion.

I

Respondents (Owners) own land and buildings at North 6600 Division Street in Spokane, Washington. The Owners lease property to an anchor tenant, K–Mart, and several others. The parties only dispute the assessed valuation of the K–Mart property in this appeal.

The K–Mart lease commenced in 1966 and runs for 20 years, with three additional 5–year options on the same terms and conditions. The minimum annual rent reserved in the lease is $146,773, with an additional percentage rental of 1 percent over gross sales of $7,712,866. The Owners pay all taxes, insurance, maintenance and repairs, but are not responsible for the building interior.

For the assessment year 1982, the Spokane County property tax assessor valued the Owners' property at $3,148,500. The Owners' appraiser valued the property at $2,150,000. The assessor arrived at his valuation by capitalizing current fair market rent (market rent) for similar property in the area. The Owners' appraiser arrived at his valuation by capitalizing rent reserved in the lease (contract rent). The discrepancy between their respective valuations is attributable to the difference between the contract rent reserved in the lease and the higher market rent for similar commercial property.

As a result of the assessor's appraisal, the assessor levied a real estate tax of $35,543.42, payable for the year 1983. The Owners paid the tax under protest and appealed to the Spokane County Board of Equalization for a tax reduction.

After losing that appeal, the Owners appealed to the Washington State Board of Tax Appeals. The Board of Tax Appeals affirmed the decision of the Board of Equalization by final order.

Having perfected their right to de novo review in superior court, the Owners moved for summary judgment in Spokane County Superior Court. The Superior Court granted Owners' motion for summary judgment holding that the assessor should value the Owners' property based upon contract income, and not upon market rent.

Accordingly, the trial court reversed the decisions of the Board of Equalization and the Board of Tax Appeals, ordered the assessor to assess the Owners' property at $2,150,000 for the year 1982, and granted judgment against Spokane County in the sum of $11,272, plus interest at 6 percent from the date of payment. Spokane County appealed the trial court's order, contending that the assessor properly valued Owners' property based upon fair market rent. The Washington State Board of Tax Appeals subsequently was dismissed as a party to the appeal.

## II

Initially, we note that the Owners do not contest the County's contention that a leasehold interest in real property constitutes real property that *should* be valued; that has long been the law of this state. *See Trimble v. Seattle*, 64 Wash. 102, 116 P. 647 (1911), *aff'd*, 231 U.S. 683 (1914). Instead, the Owners contest the County's position as to *how* the leasehold should be valued.[1]

RCW 84.40.030 provides that "[a]ll property shall be valued at one hundred percent of its true and fair value in

---

[1]Generally, upon review by this court, "it shall be presumed that the determination [of value] of the public official charged with the duty of establishing such value is correct . . ." RCW 84.40.0301. Nevertheless, "this presumption shall not be a defense against any correction indicated by clear, cogent and convincing evidence." RCW 84.40.0301. The trial court determined, *as a matter of law*, that the proper method of valuation was to capitalize contract rent. Accordingly, the quoted language is not applicable, because the presumption afforded only goes to factual determinations, as opposed to legal conclusions.

money . . ." WAC 458-12-300 defines "true and fair value" as "'market value' or [the] amount of money a buyer willing but not obligated to buy would pay for it to a seller willing but not obligated to sell." *Accord, Duwamish Warehouse Co. v. Hoppe,* 102 Wn.2d 249, 254, 684 P.2d 703 (1984) (citing *Carkonen v. Williams,* 76 Wn.2d 617, 458 P.2d 280 (1969)). In determining market value, the assessor must "consider only those factors which . . . affect the price in negotiations between a willing purchaser and a willing seller . . ." WAC 458-12-300.

In determining the market value of real property, the assessor may consider (1) comparable sales made within the past 5 years (market approach), (2) cost, cost less depreciation, or reconstruction costs less depreciation (cost approach), and (3) capitalization of income that would be derived from "prudent use"[2] of the property (income approach). WAC 458-12-301. The assessor is instructed to rely most heavily on the cost and income approaches in valuing properties of a "complex nature", or property not having a recorded sale within 5 years, and not having a significant number of sales of comparable property in the general area. WAC 458-12-301.

The property in this case constitutes retail space in a shopping center for which there are few comparable sales. Accordingly, the Owners and Spokane County correctly relied upon the capitalization of income method to value the property. *See Merrick Holding Corp. v. Board of Assessors,* 45 N.Y.2d 538, 382 N.E.2d 1341, 410 N.Y.S.2d 565 (1978); *Caroldee Realty Corp. v. Board of Assessors,* 73 Misc. 2d 41, 340 N.Y.S.2d 774 (1972); *Roosevelt Nassau*

---

[2]Spokane County argues that a lease providing for below-market rent constitutes an imprudent use of property, even if the rental rate was prudent when agreed upon. In our opinion, the term "prudent use" refers to the use to which the land is put, *e.g.,* retail space versus pastureland, as opposed to the amount of income that can be extracted from a particular tract of land being used for the purpose for which it is best suited. *See* WAC 458-12-330 (and cases cited therein). Accordingly, use of land is not necessarily imprudent simply because the owner receives less than market rent from his lessee.

*Operating Corp. v. Board of Assessors,* 68 Misc. 2d 183, 326 N.Y.S.2d 628 (1970), *aff'd,* 340 N.Y.S.2d 871 (1973). *See also* Ancel, *Determining Fair Market Value of a Shopping Center for Purposes of Property Tax Assessment,* 1965 U. Ill. L.F. 253, 254; Annot., *Income or Rental Value as a Factor in Evaluation of Real Property for Purposes of Taxation,* 96 A.L.R.2d 666 (1964). The issue is whether the assessor should have capitalized the Owners' contract rent or existing market rent for similar property. To put the issue in context, an understanding of the interests involved and the accepted method of valuing those interests is necessary.

An estimation of the value of property subject to a lease focuses upon two major interests: (1) the interest of the lessor who owns the fee, and (2) the interest of the lessee occupying the leasehold. Further analyzed, the lessor's fee interest consists of (a) the right to receive contract rent, (b) the right of reversion, and (c) any right he might have to improvements at the end of the lease. The lessee's leasehold interest consists of (a) the right to occupy the leasehold, (b) the right to the difference between contract rent and higher market rent,[3] and (c) any interest he might have in any improvements to the leasehold. Solis–Cohen, Jr., *Appraisal of Leaseholds,* in *Encyclopedia of Real Estate Appraising* 465, 473, 476–77 (1959).

An interest in real estate is a capital good, and the owner frequently receives benefits from owning it over an extended period of time. Under the capitalization of income approach, the value of an interest in income–producing real estate is determined by calculating the "present value" of the anticipated income to the owner over a specified period. Present value is the sum that a prudent purchaser–investor would pay for the right to receive the forecast net income

---

[3] If the right to occupy is worth more on the market as of the valuation date than the contract rent he is required to pay, the lessee has a net benefit (aside from any income generated by his business) which can be assigned value. W. Kinnard, Jr., *Income Property Valuation* 417 (1971).

stream over the specified period. W. Kinnard, Jr., *Income Property Valuation* 62 (1971). Although application varies, present value analysis applies equally to the lessor's reversion and right to improvements and the lessee's rental advantage and right to improvements.

The *market value* of property can be estimated by capitalizing net operating income based upon market rental for similar property with market–derived rates of discount. The *present worth* of the leased fee can be estimated by capitalizing net operating income based on contract rent with rates of discount derived from the lessor, a specific investor, or both. Valuing the leasehold is more difficult because there rarely is an active market in leasehold interests from which to abstract rate data. Accordingly, appraisers generally value a leasehold as the residual difference between the capitalized market value of the property and present worth of the leased fee. W. Kinnard, Jr., at 429–30.

Although there might be exceptions, the sum of the present value of the lessor's interest and the present value of the lessee's interest generally should approximate the present value of the fee simple, unencumbered by a lease. W. Kinnard, Jr., at 417. Accordingly, neither approach suggested by the parties to this appeal satisfactorily accounts for the value of K–Mart's interest in the leased property.

Existing case law from other jurisdictions clearly supports Spokane County's position that capitalization of fair market rent constitutes the proper method of valuation. *People ex rel. Gale v. Tax Comm'n,* 17 A.D.2d 225, 233 N.Y.S.2d 501 (1962); *In re Pine Raleigh Corp.,* 258 N.C. 398, 128 S.E.2d 855 (1963); *Crossroads Ctr. (Rochester), Inc. v. Commissioner of Taxation,* 286 Minn. 440, 176 N.W.2d 530 (1970); *Demoulas v. Salem,* 116 N.H. 775, 367 A.2d 588 (1976). Many courts have held that "the existence of an outstanding lease at an unrealistically low rental . . . of the property, is not to be used as a basis for calculating actual value." *People ex rel. Gale v. Tax Comm'n, supra* at 230. *See also Barker's Stores v. Board of Review,* 74 A.D.2d 994, 427 N.Y.S.2d 103 (1980).

Other courts have held, however, that contract rent is relevant as evidence of fair market rent, *Board of Supervisors v. Nassif*, 223 Va. 400, 290 S.E.2d 822 (1982); *Springfield Marine Bank v. Property Tax Appeal Bd.*, 44 Ill. 2d 428, 256 N.E.2d 334 (1970); *Merrick Holding Corp. v. Board of Assessors*, 45 N.Y.2d 538, 382 N.E.2d 1341, 410 N.Y.S.2d 565 (1978); *Somers v. Meriden*, 119 Conn. 5, 174 A. 184 (1934); and several courts have upheld valuations based solely on actual rent. *See CAF Inv. Co. v. State Tax Comm'n*, 392 Mich. 442, 221 N.W.2d 588 (1974); *State ex rel. Park Plaza Shopping Ctr., Inc. v. Board of Review*, 61 Wis. 2d 469, 213 N.W.2d 27 (1973); *Bystrom v. Equitable Life Assur. Soc'y of the United States*, 416 So. 2d 1133 (Fla. Dist. Ct. App. 1982); *Brickman v. Manchester*, 119 N.H. 919, 409 A.2d 1328 (1979). At least two courts have found that the assessor erred in refusing to consider contract rent in making the assessment. *Board of Supervisors v. Nassif, supra; CAF Inv. Co. v. State Tax Comm'n, supra.*

Few of the above cited cases reflect an in–depth economic analysis of leasehold valuation for property tax purposes. Cases supporting capitalization of contract rent are barren of rationale. Cases supporting capitalization of market rent largely base that choice on the proposition that "it is the capacity for earning income not actual income that reflects the fair cash value for the purpose of taxation." (Citations omitted.) *Demoulas v. Salem*, 116 N.H. 775, 781, 367 A.2d 588 (1976). As stated in *Old Colony R.R. v. Assessors of Boston*, 309 Mass. 439, 446, 35 N.E.2d 246 (1941):

> The difference in income derived by the owners from different parcels of realty of substantially the same market value might be due to imprudent management, irresponsible tenants or disadvantageous leases. . . . Such inequality arises from business and economic conditions. It cannot be attributed to the taxing statute.

(Citations omitted.)

Although the above quoted statement may be accurate to an extent, it does not comport with Washington's "willing buyer–willing seller" test, which has been superimposed by

regulation and decision over all real property valuation approaches, including the income approach. *See Duwamish Warehouse Co. v. Hoppe,* 102 Wn.2d 249, 254, 684 P.2d 703 (1984). Even if a disadvantageous lease can be attributed to imprudence, the property's value must reflect what a willing buyer would pay; a willing buyer would not pay full market value for property burdened by a long–term lease at below–market rates.

Furthermore, the quoted statement does not satisfactorily account for discrepancies between lower contract rates set with prudence under past market conditions and higher fair market rates resulting from subsequent inflation and changed business conditions. Such discrepancies frequently arise in connection with the leasing of shopping center space to large national tenants, as such tenants frequently demand long–term gross leases, without escalation clauses, and many times at discounted rates. These anchor tenants in turn attract smaller tenants and other satellite shopping areas in close proximity. These subsequent commercial leases in the surrounding area may be predicated on favorable economic conditions largely resulting from the effort and capital expenditure of the original lessor. Ancel, 1965 U. Ill. L.F., at 255.

As the fair market value of the area's commercial space rises, property assessors will increase their assessments accordingly. Nevertheless, the original lessor will be bound by the terms of his now below–market lease, facing the prospect of a fixed income in a climate of rising taxes. Failure to take notice of his plight would unduly penalize the entrepreneur whose efforts have created the business environment from which communities derive greater property tax revenues.

This scenario obviously does not apply to every commercial lease reserving rent at below–market rates. Nevertheless, contrary to dicta in many cases, neither an assessor nor a court should assume automatically that a lack of business acumen is responsible for a lease reflecting what are now below–market rates. *See Caroldee Realty Corp. v.*

*Board of Assessors,* 73 Misc. 2d 41, 340 N.Y.S.2d 774 (1972).

## III

On the other hand, property valuation based solely on capitalization of contract rent does not account properly for the value enjoyed by the lessee when market rent rises above contract rent. This value, often referred to as "bonus value", "leasehold bonus" or the "surrender value" of the lease, is readily transferable by assignment or sublease assuming no contractual restrictions, and therefore has a market value capable of assessment. *See* W. Kinnard, Jr., at 421–22. In fact, commentators have suggested an approach to valuation that recognizes the present value of the leasehold bonus to the lessee. Koeppel & Kramer, *Property Tax Assessments: Contract Rent Is Fair Market Rent, Or Is It?* 2 Real Est. L.J. 561 (1973). *See generally* Youngman, *Defining and Valuing the Base of the Property Tax,* 58 Wash. L. Rev. 713, 714–46 (1983).

Returning to Washington's "willing buyer–willing seller" test, a purchaser clearly would be unwilling to pay the capitalized value of fair market rent for property, such as the Owners', encumbered by a long–term lease at below–market rates. To disregard this lease "would be to disregard a factor which plainly would affect the price negotiations between a willing buyer and a willing seller." *Duwamish Warehouse Co. v. Hoppe,* 102 Wn.2d 249, 256, 684 P.2d 703 (1984). As stated in *Duwamish Warehouse,* such a "result is a nonuniform valuation much higher than the true and fair market value in money which the statute commands." *Duwamish Warehouse,* at 256.

A purchaser, however, would be willing to pay the capitalized value of contract rent plus the discounted present value of the leasehold bonus, if the lessee would sell his leasehold interest.[4] Because supply and demand intersect

---

[4] The fact that the lessee might be unwilling to sell his interest is of limited relevance. As a purely analytical matter, the hypothetical question in determining property value is what a willing buyer *would pay* a willing seller if the lessee

at this figure, we believe it is appropriate to fix value at this point. Accordingly, we affirm the trial court's order to the extent the court directed Spokane County to capitalize contract rent for valuation purposes, but reverse and remand the case with direction to add the present worth of the difference between the capitalized value of contract rent and market rent to the value obtained by the capitalization of contract rent.

## IV

As the foregoing makes clear, we do not suggest that the assessor, in applying the income capitalization approach to valuation, is limited to the actual contract rent as the sole measure of valuation. Property valuation is a very complicated, subjective process, and there may be considerations which suggest that the value of the property is greater than the figure generated by capitalizing contract rent. *See CAF Inv. Co. v. State Tax Comm'n,* 392 Mich. 442, 455, 221 N.W.2d 588 (1974). Furthermore, the capitalization approach is only one of several methods available to the assessor in determining property value. *See* WAC 458-12-301; *accord, Pier 67, Inc. v. King Cy.,* 78 Wn.2d 48, 57-58, 469 P.2d 902 (1970), *cert. denied,* 401 U.S. 911 (1971). Accordingly, the assessor, relying upon his expertise in property valuation, should be afforded considerable discretion in determining property value for tax purposes. *See* RCW 84.40.0301.

Nevertheless, we believe that, in valuing property subject to a long-term lease, contract rent should be presumed the proper base figure for valuation in the absence of clear, convincing evidence that market rent exceeds contract rent. *Accord, Caroldee Realty Corp. v. Board of Assessors,* 73 Misc. 2d 41, 340 N.Y.S.2d 774 (1972). If market rent exceeds contract rent, the appropriate method of valuation is to add the present value of the leasehold bonus to the

---

*would sell* his interest. Viewed this way, a willing buyer would pay the sum of the capitalized rental income plus the discounted present value of the leasehold bonus, if the lessee would sell his interest.

capitalized value of contract rent. *See* Koeppel & Kramer, 2 Real Est. L.J., at 573.

However, if the now below-market lease originally was not entered into in a good faith, arm's length transaction, the assessor may ignore contract rent and base valuation solely on market rent. Likewise, if a disadvantageous lease will expire by its terms within such a short period of time that a willing buyer reasonably can be expected to ignore the short-term burden on the property's income-producing capabilities, the assessor may rely solely on market rent. If the lease is subject to optional periodic renewals, the assessor must exercise his judgment in determining whether the lessee will exercise the option, and may ignore contract rent only if the lessee is unlikely to exercise the option.

## V

The foregoing analysis may appear to conflict with prior decisions of this court indicating that fragmenting property interests for the purpose of assessment is contrary to the theory of unit assessment. *See Trimble v. Seattle*, 64 Wash. 102, 116 P. 647 (1911), *aff'd*, 231 U.S. 683 (1914); *Alaska Land Co. v. King Cy.*, 77 Wn.2d 247, 461 P.2d 339 (1969); *Clark-Kunzl Co. v. Williams*, 78 Wn.2d 59, 469 P.2d 874 (1970); *Pier 67, Inc. v. King Cy., supra; Duwamish Warehouse Co. v. Hoppe, supra.* In *Duwamish Warehouse,* our most recent decision discussing the unit assessment rule, we limited application of the rule to only "prohibit fragmentation of value between private lessor/lessee property interests or between the lessees and sublessees of tax-exempt public property." *Duwamish Warehouse*, 102 Wn.2d at 254. Under our decision in *Duwamish Warehouse,*

> [w]here private land is leased, the entire estate including the fee, the leasehold and any improvements thereon, is assessed and taxed as a unit with the burden of paying the taxes being a matter of contract between the lessor and lessee.

*Duwamish Warehouse,* at 253.

In the context of privately owned land subject to a lease,

this court has applied the unit assessment rule in two basic situations. In *Alaska Land Co. v. King Cy., supra,* a lessee taxpayer attempted to *avoid taxation* of his leasehold interest by arguing that his indebtedness reduced the value of the leasehold. We rejected the taxpayer's contention, holding that

> the tax assessor is required by the statutes to assess each parcel of real property with the improvements erected thereon, on the basis of its market value, without deduction for indebtedness; and that where the land is leased, it is not his duty to apportion the taxes between the lessor and the lessee.

*Alaska Land,* at 254. In *Alaska Land,* application of the unit assessment rule avoided a downward distortion of the value of the property.

On the other hand, in *Clark–Kunzl Co. v. Williams, supra,* the taxing authority attempted to *increase taxation* of the lessee's leasehold interest by valuing separately the lessee's improvements to the fee. We rejected the county's contention, stating that

> the county's attempt to identify the cost of the improvements as determining the taxable value of the leaseholds and to assess this value separately from the fee interest is contrary to the general plan of our property tax statutes. The value, if any, of the improvements to the buildings should have been reflected in the assessments of the fee interests.

(Footnote omitted.) *Clark–Kunzl,* at 63. In *Clark–Kunzl,* application of the unit assessment rule avoided an upward distortion of the value of the property.

*Alaska Land* and *Clark–Kunzl* together stand for the general proposition that the unit assessment rule precludes the distortion of the leasehold's value either to avoid or increase taxation of the property. Contrary to language in *Alaska Land,* at 248, however, the unit assessment rule does not prevent an assessor from separately valuing the bonus value of the lease to the lessee and the contract rent flowing to the lessor and adding them together to arrive at the assessed value of the property.

This court has deployed the unit assessment rule to avoid the distortion of property values caused by fragmenting the leasehold interest from the leased fee. The method of valuation mandated by this opinion does not fall afoul of the rule's purpose, but rather constitutes another step toward accurate valuation of real property in Washington. Although the assessor initially must isolate on the interests involved, the property ultimately must be assessed as a unit, with the responsibility of apportionment resting upon the private parties. This result clearly comports with our interpretation and application of the the unit assessment rule.

As a final note, we do not believe taxing authorities should be required to underwrite unprofitable real estate ventures to the detriment of local government. Nevertheless, the law of this state requires that property assessments in Washington reflect what a willing buyer would pay a willing seller. Accordingly, we affirm in part, reverse in part, and remand to the trial court for proceedings consistent with this opinion.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

*Reconsideration denied December 17, 1986.*