[No. 42539-1-I. Division One. April 2, 2001.]

CASCADE COURT LIMITED PARTNERSHIP, ET AL., *Appellants*, v.
SCOTT NOBLE, *as King County Assessor*, ET AL.,
*Respondents*.

*John W. Phillips, Robin E. Wechkin,* and *Pamela C. Brown,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Margaret A. Pahl, Deputy;* and *Christine O. Gregoire, Attorney General,* and *Spencer W. Daniels, Assistant,* for respondents.

WEBSTER, J. — This case involves the valuation, for property tax purposes, of 10 low-income housing projects. The Board of Tax Appeals held that the projects should be assessed as though they were unrestricted market-rent housing, and that the interest subsidies and tax credits used to finance the projects should be considered in the estimation of value. We reverse.

## FACTS

The projects were developed and are operated by five nonprofit, tax-exempt organizations whose purpose is to develop low-income housing. Each project is subject to restrictive covenants, recorded against the real property title, that limit eligible tenants to low-income persons and limit the amount of rent that can be charged to the tenants.[1] Six of the 10 projects are subject to restrictive covenants recorded to qualify for development loans from Washington state and local governmental housing programs.[2] The remaining four projects are subject to restrictive covenants required to receive federal low-income housing tax credits.[3]

The Assessor initially assessed all 10 projects using either a cost approach,[4] comparable sales approach[5] using market-rate rent properties, or a capitalization of income approach[6] using hypothetical market rents for the units.[7]

Appellants disagreed with these assessments, arguing that all 10 units should be assessed under the capitalization of income method, with the income determined by the restricted rents.[8] Appellants appealed four of the assessments to the King County Board of Equalization, which upheld the initial assessment.[9]

---

[1] Document Index at 185.

[2] These projects will be called "the Loan Projects."

[3] *See* I.R.C. § 42. These projects will be called "the Tax Credit Projects."

[4] The cost approach estimates the cost of producing a new or substitute property and adjusts this estimated cost for differences in age, utility and condition between the subject property and a new property.

[5] The comparable sales approach estimates market value by comparing properties similar to the subject property that have recently been sold or are listed for sale.

[6] The income approach analyzes a property's ability to generate income and reversion and converts these benefits into an indication of present value.

[7] Clerk's Papers (CP) at 19.

[8] CP at 22.

[9] CP at 22.

Appellants appealed the Board of Equalization's four orders to the Board of Tax Appeals (BTA). The BTA combined these appeals with the direct appeals of the assessed values for the six other properties.

By the time the parties reached the BTA, the Assessor had come to agree with the appellants as to the six Loan Projects.[10] The Assessor argued to the BTA that the appellants were correct that the six Loan Projects should be valued under the income method, with income determined by restricted rents.[11]

As to the four Tax Credit projects, the Assessor also agreed that the proper valuation technique was the income method, using restricted rents. However, the Assessor argued that a value for the tax credits should be added to the resulting valuations.[12]

After a formal hearing, the BTA adopted the values initially determined by the Assessor. The BTA reasoned that, because the appellants entered into the recorded rent restrictions voluntarily, the Assessor was not required to use restricted rents to determine income under the capitalization of income method.[13] The BTA further held that, because the transfer of tax credits is permitted by law, the tax credits were assessable as part of the real property.[14]

This appeal followed.

## STANDARD OF REVIEW

■ Judicial review of agency orders is governed by the Administrative Procedure Act (APA), RCW 34.05.570(3).[15] Under the APA, a reviewing court may reverse a decision

---

[10] CP at 19, 20.

[11] CP at 20.

[12] CP at 20, 21.

[13] CP at 26, 27.

[14] CP at 57.

[15] *Callecod v. State Patrol*, 84 Wn. App. 663, 670, 929 P.2d 510 (1997).

when, inter alia, the decision is based on an error of law.[16] Because appellants argue that the BTA erroneously applied or interpreted the law, this court applies the "error of law" standard. When applying the error of law standard, the court may substitute its own judgment for that of the agency, although it must give substantial weight to the agency's view of the law it administers.[17] An agency's legal interpretation in areas outside of its expertise is entitled to no deference.[18]

## DISCUSSION

 The first issue is whether the Board, in valuing the properties, should have taken the rent restrictions into account. RCW 84.40.030 requires that all property be assessed at 100 percent of its "true and fair value in money." The phrase "true and fair value in money" has been consistently interpreted to mean "fair market value."[19] "Market value means the amount of money which a purchaser willing, but not obliged, to buy would pay an owner willing, but not obligated, to sell, taking into consideration all uses to which the property is adapted and might in reason be applied."[20] Thus, when determining market value, the Assessor must consider all factors that can, within reason, affect the price in negotiations between a willing buyer and a willing seller.[21] This includes "restrictions which may arise from zoning regulations or other legal limitations on the use of land."[22]

---

[16] *Tapper v. State Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[17] *William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 407, 914 P.2d 750 (1996).

[18] *Russell v. Dep't of Human Rights*, 70 Wn. App. 408, 412, 854 P.2d 1087 (1993).

[19] *Bitney v. Morgan*, 84 Wn.2d 9, 14, 523 P.2d 929 (1974).

[20] *Mason County Overtaxed, Inc. v. Mason County*, 62 Wn.2d 677, 683-84, 384 P.2d 352 (1963).

[21] 1965 Op. Att'y Gen. No. 65; WAC 458-12-300.

[22] *Twin Lakes Golf & Country Club v. King County*, 87 Wn.2d 1, 4, 548 P.2d 538 (1976).

The BTA refused to take the rent restrictions into account. It reasoned that because the restrictions were undertaken "voluntarily," they were not the sort of restrictions to be taken into account under RCW 84.40.030(1).[23] However, that statute applies only to appraisals "with respect to sales made within the past five years," that is, the comparable sales approach. The BTA's analysis was based on the income approach, not the comparable sales approach, so RCW 84.40.030(1) was inapplicable.

Even under the portion of the statute applicable to this case, RCW 84.40.030(2), the fact that the rent restrictions were "voluntary" is not dispositive of the issue of valuation. Even a voluntary transaction burdening real property will have economic consequences that must be considered in assessing the property. For example, in *Twin Lakes*, a developer agreed to record use covenants against the title to a golf course that was part of the project; the covenants provided that all residents within the project area would have the right to use the golf course for 20 years.[24] The developer entered into the covenants in order to qualify the project area for planned unit development (PUD) zoning, and the developer's request for PUD zoning was approved only because the developer had agreed to the use covenants. The Supreme Court held that the recorded use restrictions should have been taken into account by the Assessor in valuing the golf course.[25]

In *Sahalee Country Club, Inc. v. Board of Tax Appeals*,[26] the Supreme Court reiterated its analysis in *Twin Lakes*: "Today we reemphasize that the critical element of *Twin Lakes* is the subject property's market value. Any other

---

[23] CP at 55.

[24] *Twin Lakes Golf & Country Club v. King County*, 87 Wn.2d 1, 2-3, 548 P.2d 538 (1976).

[25] 87 Wn.2d at 4-5.

[26] 108 Wn.2d 26, 735 P.2d 1320 (1987).

factor is relevant only to the extent that it can be shown to affect market value."[27]

A similar question was presented in *Folsom v. County of Spokane*.[28] In that case, the Supreme Court addressed the valuation of a long-term, below-market commercial lease, concluding that an assessor should have capitalized actual rental income, rather than market rents. The Court declined to follow several out-of-state cases requiring the capitalization of market rents:

> Although the [reasoning in the out-of-state cases] may be accurate to an extent, it does not comport with Washington's "willing buyer-willing seller" test, which has been superimposed by regulation and decision over all real property valuation approaches, including the income approach. *See Duwamish Warehouse Co. v. Hoppe*, 102 Wn.2d 249, 254, 684 P.2d 703 (1984). Even if a disadvantageous lease can be attributed to imprudence, the property's value must reflect what a willing buyer would pay; a willing buyer would not pay full market value for property burdened by a long-term lease at below-market rates.[29]

The Court further discussed the "willing buyer-willing seller" test as follows:

> Returning to Washington's "willing buyer-willing seller" test, a purchaser clearly would be unwilling to pay the capitalized value of fair market rent for property, such as the Owners', encumbered by a long-term lease at below-market rates. To disregard this lease "would be to disregard a factor which plainly would affect the price negotiations between a willing buyer and a willing seller." *Duwamish Warehouse Co. v. Hoppe*, 102 Wn.2d 249, 256, 684 P.2d 703 (1984). As stated in *Duwamish Warehouse*, such a "result is a nonuniform valuation much higher than the true and fair market value in money which the statute commands." *Duwamish Warehouse*, at 256.[30]

---

[27] 108 Wn.2d at 27.

[28] 106 Wn.2d 760, 725 P.2d 987 (1986).

[29] 106 Wn.2d at 766-67.

[30] 106 Wn.2d at 768.

Here, the project owners do not have the right to charge market rents. Since the covenants run for up to 60 years, any hypothetical subsequent owner would be unable to charge market rents. Washington law directs the Assessor to focus on the price a willing buyer would pay for the property at the time of the assessment. A willing buyer would not buy the property based on rents that the buyer could not charge. Therefore, the Assessor should have taken the restricted rents into account when assessing the property. For example, an assessor using the income method should capitalize the maximum rents allowed under the covenants. An assessor using the cost method should make allowances for functional[31] and economic[32] obsolescence depreciation.[33] The BTA's failure to hold that the restricted

---

[31] " 'Incurable functional obsolescence is "Functional obsolescence that results from structural deficiencies or superadequacies that the prudent purchaser or owner would not be justified in replacing, adding, or removing, because the cost of effecting a cure would be greater than the anticipated increase in utility resulting from the replacement, addition or removal." ' (Footnotes omitted.) Bryl [sic] N. Boyce & William N. Kinnard, Jr., *Appraising Real Property* 298-99 (1984) (quoting *Real Estate Appraisal Terminology* 114 (Byrl N. Boyce ed., rev. ed. 1981))." *Weyerhaeuser Co. v. Easter*, 126 Wn.2d 370, 385-86, 894 P.2d 1290 (1995).

Tax credit properties are often superadequate due to unique property characteristics and development expenses. *See* Br. of Appellant at n.18.

[32] The deed restrictions affect the income-producing ability of the projects and thus affect their value. As a result, if the Assessor considers the deed restrictions' effect on the rental income generated by the projects, the Assessor may conclude that the deed restrictions cause the projects to suffer economic obsolescence. *See, e.g., Pedcor Invs.-1990-XIII, L.P. v. State Bd. of Tax Comm'rs*, 715 N.E.2d 432, 437 (Ind. Tax Ct. 1999).

[33] While we do not hold that the Assessor must use any one of the three available appraisal methods to the exclusion of the other two, we hold that, regardless of the method used, the rent restrictions should be taken into account by the Assessor. However, we do note that the Department of Revenue (DOR), as amicus, has argued that "the preferred approach to valuing low-income housing . . . is to capitalize net operating or actual income." DOR Br. at 10 (footnote omitted). Furthermore, the cost method is generally preferred only where the properties being appraised "are not amenable to valuation by the income capitalization approach." APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 338 (11th ed. 1996). Finally, the appraisal literature and case law regarding rent-restricted low-income housing argue against the use of the cost method. *See, e.g.,* David C. Nahas, *Appraising Affordable Multifamily Housing,* APPRAISAL JOURNAL, July 1994; Richard E. Polton, *Valuing Property Developed with Low-Income Housing Tax Credits,* APPRAISAL JOURNAL, July 1994; Laurence G. Allen, *Valuing Subsidized Housing for Property Tax Purposes,* APPRAISAL JOURNAL, Jan. 1986. *See also Cmty. Dev. Co. of Gardner v. Bd. of Assessors,* 377 Mass. 351, 385

rents should be taken into account by the Assessor was error.

■ Furthermore, the BTA erred in holding that the federal tax credits[34] received by the appellants should be included in the assessed value of the projects. Tax credits are intangible personal property and thus are not subject to real property taxation. *See* RCW 84.04.080, .090; WAC 458-12-005, -010. The Assessor should not take the tax credits into account in the assessment of the property.

## ATTORNEY FEES

■ Appellants have requested attorney fees under RCW 4.84.350, which provides for an award of attorney fees to a qualified party that prevails in a judicial review of an agency action.[35] However, the Assessor is not an "agency" within the meaning of RCW 4.84.340(1), which defines an "agency" as:

> any state board, commission, department, institution of higher education, or officer, authorized by law to make rules or to conduct adjudicative proceedings, except those in the legislative or judicial branches, the governor, or the attorney general

N.E.2d 1376 (1979) (construction costs of federally rent-controlled low-income housing overstate the market value of a project since, in the absence of governmental subsidies, the rental stream produced by the property would not justify actual expenditure on construction); *Bayridge Assocs. Ltd. P'ship v. Dep't of Revenue*, 13 Or. Tax 24, 31 (1994) (due to governmental restrictions cost approach would give excessive indication of value), *aff'd*, 321 Or. 21, 892 P.2d 1002 (1995).

[34] The low-income housing tax credit is available for certain low-income housing projects. I.R.C. § 42(a), (c)(2), (g). In order to qualify for that credit, the owner of, or investor in, an apartment complex must make available a certain number of rental units in the project for use by the general public on a residential basis for not less than 15 years. I.R.C. § 42(g), (i)(1).

[35] RCW 4.84.350. "**Judicial review of agency action — Award of fees and expenses.** (1) Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought."

except to the extent otherwise required by law.[36]

The Assessor is not authorized by law to either make rules or conduct adjudicative proceedings. Rule making is performed by the Department of Revenue, and the boards of equalization and Board of Tax Appeals conduct adjudicative proceedings.[37] While the Assessor's actions in this case constitute "agency action," as the Assessor applies agency rules,[38] the Assessor is not an agency under RCW 4.84.340(1). Therefore, the appellants' request for attorney fees is denied.

We reverse the final decision of the Board of Tax Appeals and remand to the Board to determine the values of the projects in accordance with this Court's decision. We further direct the King County Assessor and Treasurer to change and correct the assessment and tax rolls of King County accordingly.

AGID, C.J., and BAKER, J., concur.

---

[36] RCW 4.84.340(1).

[37] *See* RCW 84.08.010.

[38] *See* RCW 34.05.010(3): " 'Agency action' means licensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits."