**Winthrop Townsend and Marie Boisvert v. Town of Middlebury**

[365 A.2d 515]

No. 218-75

Present: Barney, C.J., Smith, Daley, Larrow, and Billings, JJ.

Opinion Filed September 17, 1976

*Winthrop Townsend*, Windsor, *pro se.*

*Jon C. Stahl* of *Langrock and Sperry*, Middlebury, for Defendant.

Smith, J. Appellees are the owners of a gas station located on a one-acre plot of land situated on U.S. Route 7 in the Town of Middlebury. The town, appellant here, underwent a complete re-appraisal of all its real property for the tax year beginning April 1, 1974. As a result thereof, the appraised valuation of appellees' property was raised from $32,000.00 to $86,100.00. Appellees brought their grievance with this new

figure to the board of listers. No change, however, in the appraisal amount was felt to be called for by the listers. Accordingly, appellees presented their appeal to the town board of civil authority. The board upheld the value set by the listers.

Pursuant to 32 V.S.A. § 4461, appellees then filed an appeal with the Vermont Commissioner of Taxes from the decision of the board of civil authority. Hearing on the appeal was held before the State Appeals Board in Middlebury on March 18, 1975. There, appellee Townsend contended that the value fixed by the listers was not representative of the property's fair market value since the location was subject to a renewable lease and pre-emptive purchase option for $20,000.00 in favor of the Getty Oil Company. The town, by its counsel, objected to the board's consideration of this agreement on the grounds that such agreements are not relevant factors, given the statutory mandate of 32 V.S.A. § 4467, in the appraisal of real property for tax purposes. The town further argued that to take the lease/option into account would be tantamount to promoting a system of "unilateral tax stabilization" detrimental to the public interest.

Subsequently the board issued its findings and order in which it stated, ". . . the effect of the lease and purchase option should be reflected for tax purposes." Therefore the board decided that the initial valuation should be reduced to $64,500.00 to account for the lease/option agreement. The town has filed the current appeal from this determination of the board.

The issue presented to this Court is whether the Vermont State Appeals Board erred when it reduced the appraised value of appellees' property due to the existence of the lease and option agreement.

Title 32 V.S.A. § 4467 sets the standard to be followed by the board in tax appeals, "[T]he board or court shall proceed de novo and determine the correct valuation of the property. . . ." By these terms, the board is directed to determine the proper fair market value to be allocated the property. *Town of Barnet* v. *Central Vermont Public Service Corp.*, 131 Vt. 578, 313 A.2d 392 (1973). The question before us is whether a lease/option agreement should enter into the board's consideration of fair market value for purposes of taxation. While

the statutes are silent on this matter, some direction is afforded by 32 V.S.A. § 3481(1), which states:

"Appraisal value" shall mean the estimated fair market value of property. In determining such fair market value the listers shall take into consideration and give due weight to the effect of any state or local law or regulation affecting the use of land, . . .

Although we are concerned here with a privately imposed restraint on land, it is clear that the Legislature intended that bona fide restraints affecting property, at least those governmental in origin, should be a factor in determining fair market value. The extension of this practice to situations such as that posed here is not contrary to the logic of the statute and is consistent with prior Vermont case law. In *Petition of Mallary*, 127 Vt. 412, 418–19, 250 A.2d 837 (1969), this Court defined fair market value thusly:

It is the price which a piece of property will bring in the market when offered for sale and purchased by another, taking into consideration all the elements of the availability of the property, its use, potential or prospective, and all other elements which combine to give a piece of property a market value.

It is obvious that the presence of a lease/option agreement concerning a parcel of property is an element which enters into giving a saleable or market value to the property. Prior Vermont cases have held that fair market value is in part to be determined by what a buyer would be willing to pay for the property. *In re Heath*, 128 Vt. 519, 524, 266 A.2d 812 (1970). A buyer, confronted with the presence of a lease/option involving a parcel of property which he was interested in purchasing, would certainly take such agreement into account in determining what price he would find acceptable for the parcel desired since any such agreement would affect both the use and future alienability of the property.

The town has suggested that such options and leases might be placed on property by unscrupulous owners for the purpose of tax avoidance. However, we believe that any attempted fraud of this nature would be readily discoverable through resort to the judicial process. In addition, should reductions in

appraised values due to long-term leases and options be regarded as the creation of tax inequities, the situation would be easily remedied by statute taxing those interests to the holder. Cf. 32 V.S.A. § 3610, levying such a tax on lessees in perpetual leases. *Jetton* v. *University of the South,* 208 U.S. 489, 500, 504, 28 S.Ct. 375, 52 L.Ed. 584 (1908).

*The determination and re-appraisal made by the State Appeals Board is affirmed.*