0461    0540

SOUTH CAROLINA TAX COMMISSION, Appellant, v. SOUTH CARO-LINA TAX BOARD OF REVIEW, Baker and Baker, David Baker, Lee J. Baker, Deborah Ann Baker, Kenneth E. Baker, Frank W. Baker, John D. Baker, Dale A. Baker, Gail B. Anastasion, Janna B. Creech, and Laurie A. Baker, of whom Baker and Baker, David Baker, Lee J. Baker, Deborah Ann Baker, Kenneth E. Baker, Frank W. Baker, John D. Baker, Dale A. Baker, Gail B. Anastasion, Janna B. Creech, and Laurie A. Baker, are Respondents.

(339 S. E. (2d) 131)

Court of Appeals

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.* and *Asst. Atty. Gen. Ronald W. Urban,* Columbia, *for appellant.*

*Steven M. Anastasion* of *Callison, Tighe & Rush,* Columbia, *for respondents.*

*J. D. Todd, Jr.* and *Jack H. Tedards, Jr.,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *amicus curiae.*

Heard Oct. 16, 1984.

Decided May 7, 1985.

On Petition For Rehearing
Aug. 21, 1985.

GARDNER, Judge:

The respondent Baker and Baker (Baker)[1] is a South Carolina general partnership which owns an office building in Columbia, S. C. Approximately 61 percent of the net rental space of the building is leased by long-term leases to a utility and for this reason the property was appraised for *ad valorem* taxes by the South Carolina Tax Commission. All parties admit that the utility leases were entered into at arms length and that the rental was fair and reasonable when the property was leased. The South Carolina Tax Commission appraised the property for 1980 *ad valorem* taxes as having a fair market value of $2,330,000. This appraisal gave no consideration to the existing contract rents of the leases. Baker appealed the appraisal. An admin-

---

[1] The individuals named in the caption are the partners of the partnership.

istrative hearing was first held by the Commission at which time testimony of the Bakers and experts for both sides was taken. The Tax Commission then reduced its appraisal to $2,030,000. The Bakers then appealed the decision to the Tax Board of Review, which ruled that the fair market value of the property for purposes of appraisal for 1980 *ad valorem* taxes was $1,596,500. On appeal to the Court of Common Pleas, the decision of the Tax Board of Review was affirmed. We agree and affirm.

The appraisals submitted by the parties at the administrative hearing employed the usual and customary methodology in arriving at the fair market value of the subject property, i.e.: the income or capitalization approach, the replacement value approach, and the market data or comparable sales approach. The controversy between the parties results from the weight and effect given to the leases encumbering the subject property in determining its fair market value.

The sole issue on appeal is whether the Tax Board of Review erred by using the contract rents of the leases in valuing the leased property under the income or capitalization of income method of evaluation.

This decision is necessarily founded in the statutory law of this state. Authorities of other states are divided, largely because of variances in statutory law.

To understand this case, the reader must have at least a rudimentary understanding of the income or capitalization of income approach to appraising property.

The income or capitalization of income approach to appraising property is, in the last analysis, a process whereby the appraiser assumes that a purchaser of or investor in commercial real estate buys the real estate with the expectation of earning an annual percentage of the purchase price (capital investment) of the commercial property. If the property is commercial and under long-term lease, the net annual rental (assuming a depreciation factor consistent with replacement of the property at the end of the lease or the retained value thereof) is divided by the desired yield on the capital investment. The formula is: net annual rental ÷ required yield (such as 12 percent) = the purchase price. As an illustration, suppose an investor considers buying com-

mercial property offered for sale and that the property is leased for a ten-year term for $16,800 net income per year and would retain its present value during the term of the lease; suppose further that the investor expected a yield of 12 percent per annum. Under this hypothetical proposition, when appraised under the capitalization of income approach, the investor would believe the property to be worth $140,000, which is the quotient of dividing $16,800 by .12$^2$.

The Tax Commission argues that present day rental ■■ value, rather than the rentals provided by the leases encumbering the property, should have been used in appraising the property under the capitalization of income approach. We reject this argument as being impractical and unrealistic. Even the Tax Commission appraiser at the administrative hearing conceded that if he were advising a purchaser about the fair market value of the subject property, the existing leases or contract rents encumbering the property would have to be taken into account. People in the market place deal with the realities of the moment when they invest their money. The evidence of record shows that in making offers to purchase commercial property on the open market, investors consider long-term leases encumbering the property. And, it is the market place value of the real property which determines its value for *ad valorem* taxes. Section 12-37-930, Code of Laws of South Carolina (1976), provides:

Section 12-37-930. Valuation of property.

> All property shall be valued for taxation at its true value in money which in all cases shall be held to be the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing, are not acting under compulsion, and are reasonably well informed as to the uses being

---

[2] The capitalization of income approach to appraising commercial property involves more factors than the simple explanation given above, but the above definition is the core of the principle. See the *Appraisal of Real Estate*, 6th Ed., page 70, American Institute of Real Estate Appraisers and *The Language of Real Estate*, by John W. Riley, published by the Real Estate Education Company, Chicago, Illinois. These publications, if not in the local library of the reader, can be found in the office of the U. S. Department of Housing and Urban Development, Columbia, South Carolina.

used. Provided, however, that acreage allotments or marketing quota allotments for any commodity as established under any program of the United States Department of Agriculture shall be classified as incorporeal hereditaments and the market value of any real property to which they are attached shall not include the value, if any, of such acreage allotment or marketing quota.

We hold that under this statute there is no valid distinction between market value for sales purposes and market value for taxation purposes.

We also hold that the language of the above statute provides the answer to the question presented this court: all property must be valued at its "true value in money" which is defined to be the market value between a willing buyer and seller.

In determining the market value of income producing commercial real estate, we hold that the contract rent of long-term leases entered into at arms length and at a fair rental at the time is one of the determinative factors of the market value of property.

The Tax Commission makes a strange argument; it asserts that the appraisal of the property should be increased because Baker and Baker entered into an unprofitable leasing agreement. (The evidence of record indicates that at the time of the appraisal, the rental value was in excess of that provided in the long-term leases.) The Tax Commission argues that any decrease in value to Baker and Baker would be offset by an equivalent increase in value to the lessee. This argument is illogical. Investors on the market would not give the slightest consideration to how good a deal the lessee got because this would furnish no income to a potential investor or purchaser. The Tax Commission cites no South Carolina authority supporting this; and there is none.

The Administrative Procedures Act of this State provides the standard under which the Tax Board of Review's decision is to be reviewed by the Court of Common Pleas and this Court. Section 1-23-380, Code of Laws of South Carolina (1976) as amended, states:

(f) The review shall be conducted by the court without a jury and shall be confined to the record. . . .

(g) *The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.* The court may affirm the decision of the agency or remand the case for further proceedings. This court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

\*   \*   \*   \*   \*   \*

(5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; (Emphasis ours.)

There is no constitutional question involved and the appealed order in no way violates the statutes of this State nor is the appealed order clearly erroneous in view of the substantial evidence of record. Both parties submitted testimony of their tax experts. This court holds that there is substantial evidence of record supporting the appealed order.

For the reasons stated, the appealed order is affirmed.

Affirmed.

BELL and CURETON, JJ., concur.

On Petition for Rehearing

*Per Curiam:*

Petition for rehearing was granted for a full hearing to consider the grounds stated in the petition. We adhere to the decision as published.

Section 12-37-930 provides that:

All property shall be valued for taxation at its true value in money which in all cases shall be held to be the price which the property would bring following reasonable exposure to the market, where both the seller and

the buyer are willing, are not acting under compulsion, and are reasonably well informed as to the uses and purposes for which it is adapted and for which it is capable of being used. . . .

The Tax Commission concedes that a willing buyer considering the purchase of real property subject to a long term lease would consider contract rents under the lease in determining the price at which he would be willing to purchase the fee simple interest. Thus, in valuing the fee simple interest at its true value, it is appropriate to consider both contract rents under an existing lease and current market rents in arriving at a value for taxation. In our opinion, the Tax Board of Review properly considered contract rents in arriving at the assessed value of the subject property.

Despite the Commission's attempt to portray this as a case involving fundamental questions of tax law, we view the controversy as directed mainly to the weight of the evidence. Stripped to its essentials, the Commission's argument is that the Tax Board of Review gave controlling weight to contract rents when it should have given controlling weight to market rents. As long as there is substantial evidence in the record as a whole to support the findings of the Tax Board of Review, it is not the function of this Court to weigh the evidence for the purpose of valuing the property. Section 1-23-380, Code of Laws of South Carolina (1976).

Next the Tax Commission argues that the majority of cases of other states is inconsonant with this court's opinion. We have read and studied each case cited by the Tax Commission; these cases vary in their exact holdings. Our decision is based upon the statutory law of South Carolina, which differentiates the cited cases from the applicable law of this State.

We adhere to our decision that § 12-37-930 provides that valuation of property for taxation purposes is to be based upon its market value with consideration given "as to the uses and purposes for which it is adapted and for which it is capable of being used." An existing lease admittedly entered into at arms length and for a fair consideration is an element to be considered in ascertaining market value; in this holding, we adhere to our decision.

We observe that our decision simply finds that there is substantial evidence to support the findings of the Tax Review Board. We note that § 12-37-930 was inadvertently incorrectly stated in the decision. The correct version is:

§ 12-37-930. Valuation of property.

All property shall be valued for taxation at its true value in money which in all cases shall be held to be the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing, are not acting under compulsion, and are reasonably well informed as to the uses and purposes for which it is adapted and for which it is capable of being used. . . .

For the reasons stated, we adhere to the decision as published.