LEAVELL–RIO GRANDE CENTRAL ASSOCIATES, Stellar Enterprises, Ltd., 19th & Lawrence Associates, 17th & Market Associates, Ltd., Cherry Creek 3033 Ltd., Lowe Corporation, CA Associates, Energy Plaza Associates, and Metropolitan Life Insurance Company, Plaintiffs–Appellants,

v.

BOARD OF ASSESSMENT APPEALS, State of Colorado, Denver County Board of Equalization, Defendants–Appellees.

LEAVELL–RIO GRANDE CENTRAL ASSOCIATES, Stellar Properties, Inc., Stellar Enterprises, Ltd., Energy Plaza Associates and Metropolitan Life Insurance, CA Associates, 19th & Lawrence Associates, First Interstate Bank of Denver, N.A. (17th & Market Associates, Ltd.), Equitable Life Assurance Society of the United States, and DPC, Inc., Plaintiffs–Appellants,

v.

DENVER COUNTY BOARD OF EQUALIZATION, Defendant–Appellee.

Nos. 86CA0017, 86CA1208.

Colorado Court of Appeals, Div. II.

Feb. 4, 1988.

Rehearing Denied March 17, 1988.

798

Cogswell & Wehrle, Daniel H. Israel, Denver, for plaintiffs-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, Asst. Atty. Gen., Denver, for defendant-appellee Bd. of Assessment Appeals.

Stephen H. Kaplan, City Atty., Eugene J. Kottenstette, Asst. City Atty., Denver, for defendant-appellee Denver County Bd. of Equalization.

BABCOCK, Judge.

In this consolidated appeal, plaintiffs (taxpayers), owners of various commercial properties in Denver, seek review of the district court judgments affirming the decisions of the Denver County Board of Equalization and the Board of Assessment Appeals (agencies) which affirmed 1984 and 1985 assessments of taxpayers' properties. We affirm in part and reverse in part.

## I.

Taxpayers first contend that the building assessments are erroneous as they fail to take into account extraordinary rent abatements. We disagree.

Colo. Const. art. X, § 3, provides:

"The actual value of all real and personal property not exempt from taxation under this article shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of all real and personal property not exempt from taxation under this article."

Section 39–1–103(5)(a), C.R.S. (1987 Cum. Supp.), designates the methods to be employed by the assessor when determining "actual value:"

"All real and personal property shall be appraised and the actual value thereof for property tax purposes determined by the assessor of the county wherein such property is located. The actual value of such property ... shall be that value determined by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal...."

The method by which valuation for taxation purposes is to be formulated is a legislative function and is not a proper subject for judicial determination. *Salt River Project Agricultural Improvement & Power District v. Board of Assessment Appeals*, 719 P.2d 368 (Colo.App.1986). Therefore, our review is limited to the narrow ascertainment of agency abuse of discretion by neglecting to abide by the statutes for calculating tax assessments.

Moreover, taxpayers who protest property tax assessments have the burden of proving that the assessment is incorrect. *Majestic Great West Savings & Loan Ass'n v. Reale*, 30 Colo.App. 564, 499 P.2d 644 (1972).

Here, the record shows that the assessor, after consideration of the three approaches specified in § 39–1–103(5)(a), determined an actual value based upon the income approach for a number of taxpayers' rental properties. Taxpayers' own expert testified to the credibility of this approach. Thus, taxpayers may not now dispute the assessor's utilization of this method.

Despite taxpayers' stipulation to the suitability of the income approach, they assert an unlawful determination of actual value because the assessor neglected to consider rent abatements in his valuation equation. Taxpayers contend that a depressed economy constitutes an "unusual condition" which drove them to enter into leases which abate rent payable over a portion of the terms of the leases. Consequently, they argue, rental properties subject to rent abatement leases depress the properties' actual value.

The statutory provision applicable here, Colo.Sess.Laws 1983, ch. 429, § 39–1–104(11)(b)(I) at 1495, states in pertinent part:

"For the purposes of this paragraph (b), an unusual condition which could result in an increase or decrease in actual value is *limited to* the installation of an on-site improvement, the addition to or remodeling of a structure, a change of use of the land ... any new regulations restricting or increasing the use of the land, or a combination thereof, any detrimental acts of nature, and any damage due to accident, vandalism, fire, or explosion...." (emphasis added)

The unambiguous language of this statute sets forth an exclusive and restrictive set of unusual circumstances upon which the assessor may, in his discretion, rely in calculating the actual value of commercial property. Economic factors which encourage rent abatement leasing are not included in this list. Moreover, rent abatement provisions are bargained for by the parties to commercial leases. Inclusion of rent abatements as a factor of value under the income approach could foster taxpayer-manipulated, artificially depressed property values, contrary to the mandate of Colo. Const. art. X, § 3 and § 39–1–103(5)(a), C.R.S. (1987 Cum.Supp.), that property be assessed upon its *actual* value.

We conclude that the assessor lawfully excluded rent abatement from his consideration of actual value. Therefore, the agencies' affirmation of the assessment values was not arbitrary, capricious, or an abuse of discretion. Section 24–4–106, C.R.S. (1982 Repl. Vol. 10); *see Dolan v. Rust,* 195 Colo. 173, 576 P.2d 560 (1978). Accordingly, it will not be set aside.

## II.

Plaintiffs next contend that the assessor's Denver Urban Renewal Area land assessments should be set aside as they disregard comparable sales. Again, we disagree.

It is undisputed that the approach used by the assessor in determining these land values was valid. Thus, our review is confined to whether there is competent evidence to support the agencies' findings. *Montrose Properties, Ltd. v. Board of Assessment Appeals,* 738 P.2d 396 (Colo.App.

1987). When there is substantial evidence in the record, a reviewing court is obliged to affirm the agency action. *First Christian Church v. Board of Assessment,* 711 P.2d 721 (Colo.App.1985).

Here, the record as a whole supports the agencies' findings that the assessor properly determined the urban renewal land values. A county assessor testified that, where possible, he used a "grid system" to compare the sale value of the subject land to similar property recently sold in the area. This analysis was not used where there were inadequate sales of like kinds of land to provide a basis for comparison. Therefore, there is substantial and competent evidence in the record supporting the agencies' findings that the assessor's valuation methods applied to the urban renewal land were correct.

## III.

Taxpayers' final contention is that the assessor unlawfully increased the 1984 and 1985 assessment of the Park Central Building. We agree.

In determining actual value during the intervening years between the base years, an assessor is not prevented from taking into account any unusual conditions related to any real property that would result in an increase or decrease in actual value. *See* Colo.Sess.Laws 1983, § 39–1–104(11)(b)(I), *supra.* Further, an assessor may revalue a property for an intervening year to rectify an incorrect base value assessment; however, an assessor may not revalue a property in an intervening year that has been correctly assessed, except as necessary to reflect the increase or decrease in actual value attributable to an unusual condition. *See* Colo. Sess.Laws 1983, § 39–1–104(11)(b)(I), *supra.* "Unusual conditions" are those exclusive factors set out in the statute.

Here, the Park Central Building's 1983 original assessment was $24,487,700. In July of 1983, the assessor, upon a protest, reduced this valuation to $22,874,200. A final actual value of $21,170,000 for this

property was agreed upon by the assessor in January 1984. Thereafter, the 1984 assessment ignored the final actual value set in January, and returned to the July 1983 value of $22,874,200.

There is no competent evidence of record to substantiate the assessor's 1984, and thus, 1985 increase in value from $21,170,000 to $22,874,200 or that the final 1983 assessment was incorrect. Similarly, there is no evidence of an "unusual condition" that would warrant such an increase.

Therefore, we conclude that this valuation increase was arbitrary, capricious, and unsupported by competent, substantial evidence. *See* § 24–4–106, C.R.S. (1982 Repl. Vol. 10); *Montrose Properties, Ltd. v. Board of Assessment Appeals, supra.* Thus, we cannot affirm the 1984 and 1985 Park Central Building assessment. *See First Christian Church v. Board of Assessment, supra.*

### IV.

The agencies contend that the appeals of DPC, Inc., and CA Associates should be dismissed because the issues raised here do not relate to these two taxpayers. We disagree.

The record shows that the petitions for judicial review to the district courts filed by DPC, Inc. and CA Associates set forth contentions that fall within the issues discussed in section II of this opinion.

That portion of the judgment of the trial court increasing the 1984 and 1985 valuation of the Park Central Building is reversed and the cause is remanded with directions to return the Park Central Building valuation to $21,170,000. The remainder of the judgments of the trial courts are affirmed.

SMITH and PLANK, JJ., concur.