**BOARD OF ASSESSMENT APPEALS OF the STATE OF COLORADO, and Regis Jesuit Holding, Inc., Petitioners–Appellees,**

v.

**CITY AND COUNTY OF DENVER, State of Colorado, Board of Equalization of the City and County of Denver, and Alan N. Charnes, Manager of Revenue, in his official capacity as ex officio Assessor of the City and County of Denver, Respondents–Appellants.**

No. 90CA0814.

Colorado Court of Appeals,
Div. IV.

Oct. 10, 1991.

Rehearing Denied Nov. 21, 1991.

Certiorari Granted May 11, 1992.

entirely your decision to determine what

weight shall be given their testimony.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, Asst. Atty. Gen., Denver, for petitioner-appellee Bd. of Assessment Appeals of State of Colo.

Jon Slaughter Pelegrin, Lakewood, for petitioner-appellee Regis Jesuit Holding, Inc.

Patricia L. Wells, City Atty., Donald E. Wilson, Karen A. Aviles, Asst. City Atty., Denver, for respondents-appellants.

Opinion by Judge REED.

Respondents, City and County of Denver, its Board of Equalization, and Alan M. Charnes, ex officio assessor, appeal the order of the petitioner Board of Assessment Appeals (BOAA) which reduced for *ad valorem* tax purposes the value of the subject real property owned by the petitioner Regis Jesuit Holding, Inc. (Regis) for tax year 1989. We affirm.

This action involves the valuation, as of January 1, 1989, of property located at 5001 Federal Boulevard, Denver, Colorado, owned by Regis. The property is occupied by a K–Mart store pursuant to a lease executed by Regis in 1965. Although the base term of the lease was for 20 years, the lease is subject to a series of options to renew by the lessee, which extends the term through the year 2000.

By the terms of the lease, the lease payments are based upon a rate of $1.50 a square foot plus an override. As a result, the lease payments during the years 1987–1988 were approximately $2.00 a square foot. It is undisputed that this lease rental rate is considerably below the market for leases of comparable properties that were entered into in 1987 and 1988.

The assessor for the City and County of Denver valued the property, as of January 1, 1989, at $3,731,000. This value was affirmed by the Denver Board of Equalization (DBOE) upon challenge by Regis.

Thereafter, Regis appealed and a *de novo* hearing was held before the BOAA. It determined that the value of the property was $2,500,000—a value considerably below that urged by the assessor and affirmed by the DBOE ($3,731,000) and considerably more than that urged by Regis ($1,066,470).

The fundamental dispute between the parties is the effect of the existing lease,

with its terms unfavorable to Regis, in valuing the property. The assessor's premise is that the property shall be valued as if the encumbrance of the lease does not exist, or at least, that the lease is to be discredited. Regis, on the other hand, contends that the terms of the long-term lease play a vital role on the issue of value.

The assessor's evidence was that he examined the available data for the statutory base years, January 1, 1987, through June 30, 1988 (and the five-year extension period preceding June 30, 1988), and found no comparable properties which were sold *free* from a long-term lease. Thus, he considered, and then rejected, the market approach. Also, he considered the cost approach. However, it resulted in a value of $3,997,400, which, in his opinion, exceeded the true value of the property. Therefore, this approach was rejected by him.

However, in considering the income approach, the assessor testified that, for comparable properties, he had compared and examined leases that had been entered into during the 18-month base period and that this comparison established a fair market rental rate of $4.00 a square foot (and $7.25 a square foot for K–Mart's service garage). Thus, utilizing these rental rates rather than the actual lease payments, he assessed a value of $3,731,000 which was subsequently adopted by the DBOE.

Regis' expert agreed with the assessor that a value under the cost approach was excessive and should be disregarded. As to the market approach, however, Regis' witness relied upon sales of comparable properties which were encumbered at the time of sale with long-term leases similar to that upon Regis' property. Because there were no sales during the regular 18-month base period, the comparables chosen by this expert were sales occurring within the extension of the base period permitted by statute, *i.e.*, within five years prior to June 30, 1988. After adjusting these sales and bringing them current to January 1, 1989, Regis' expert found the market value of the subject property to be $1,316,138.

This witness also determined value based upon the income approach. To do so, he factored in the lease payments of the subject property, as an indicator, along with lease payments made upon comparable properties during the 18-month base period. In each instance, all of the lease rates were determined by long-term leases entered into in 1965, 1967, and 1975, respectively. Using the income approach, the expert determined a value of $1,066,460.

After hearing, the BOAA determined the value of the property to be $2,500,000 which it allocated between the land and the improvements. The assessor and DBOE appeal from this determination.

## I.

Respondents contend that the BOAA erred in considering the market approach to determine the property's value because the only evidence thereof represented a sale of but a partial interest in the property. We disagree.

Colo. Const. art. X, § 3(1)(a), provides in pertinent part:

"Each property tax levy shall be uniform upon all real and personal property.... The actual value of all real and personal property ... shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of all real and personal property.... Valuations for assessment shall be based on appraisals by assessing officers to determine the actual value of property in accordance with provisions of law, which laws shall provide that actual value be determined by appropriate consideration of cost approach, market approach, and income approach to appraisal."

Pursuant to this constitutional mandate, the General Assembly has enacted a statutory scheme for the appraisal of property. This includes § 39–1–103(5)(a), C.R.S. (1990 Cum.Supp.), which provides, in pertinent part:

"All real and personal property shall be appraised and the *actual value* thereof for property tax purposes determined by the assessor.... The *actual value* of

such property ... shall be that value determined by *appropriate consideration of the cost approach, the market approach, and the income approach* to appraisal. The assessor *shall consider and document* all elements of such approaches that are applicable *prior* to a determination of *actual value.*" (emphasis added)

To facilitate this procedure, § 39–1–104, C.R.S. (1990 Cum.Supp.) requires that a base year system be established to assign values to property. Under that method, the value of property is based upon a specified base period which value is then used in calculating the property's assessed value each year until a new base period is established. *Carrara Place, Ltd. v. Arapahoe County Board of Equalization*, 761 P.2d 197 (Colo.1988).

The base period for the 1989 assessment is the 18–month period from January 1, 1987, through June 30, 1988, "except that, if comparable valuation data is not available from such one-and-one-half year period to adequately determine the value of a class of property, the period of five years immediately prior to July 1, 1988, shall be utilized to determine the level of value" for assessments for 1989. *See* § 39–1–104(10.-1)(b), C.R.S. (1990 Cum.Supp.).

Additionally, § 39–1–106, C.R.S. (1982 Repl.Vol. 16B), provides:

"For purposes of property taxation, *it shall make no difference* that the use, *possession,* or ownership of any taxable property is qualified, limited, not the subject of alienation, or the subject of levy or distraint separately from the particular tax derivable therefrom...." (emphasis added)

While conceding that the market approach is a mandated valuation method, respondents argue that it should have been rejected here. They argue that there was no evidence of a sale of *all* the interests in the property because the subject property, as well as the comparable properties, were all subject to leases and that, therefore, the sales only reflected a sale of the lessor's interest to receive rent and the right of reversion when the lease expires.

Respondents assert that, under § 39–1–106, both the lessor's and lessee's interest must be valued so that the fee simple estate can be valued as if it is unencumbered by lease. This is an issue of first impression in Colorado. However, respondents' contention is supported by authority from other jurisdictions. *Valencia Center, Inc. v. Bystrom*, 543 So.2d 214 (Fla.1989); *Alliance Towers v. Stark County Board of Revision*, 37 Ohio St.3d 16, 523 N.E.2d 826 (1988); *People v. Tax Commission*, 17 A.D.2d 225, 233 N.Y.S.2d 501 (1962). In support of their position, respondents contend that a failure to consider the lessee's interest would result in an assessment below market value because a lessor could transfer a large part of the property's value to the lessee.

Other jurisdictions, however, have rejected this contention and have concluded that even when property is subject to an existing lease, the sale price reached through an arms-length transaction is the best indication of fair market value for property tax purposes. *Darcel, Inc. v. City of Manitowoc Board of Review*, 137 Wis.2d 623, 405 N.W.2d 344 (1987); *C.A.F. Investment Co. v. Township of Saginaw*, 410 Mich. 428, 302 N.W.2d 164 (1981).

We are more persuaded by this latter line of reasoning and, therefore, reject respondents' contention. The focus of the Colorado Constitution is to require the assessment of property based on its *actual* value, and to that end, market value is a mandated approach. Market value, for taxation purposes, is the price which a willing buyer would pay a willing seller under normal economic conditions. *May Stores Shopping Centers, Inc. v. Shoemaker*, 151 Colo. 100, 376 P.2d 679 (1962).

The sale price of property accurately reflects such a value. Implicit in the sale price of a piece of property is consideration that the property is subject to a lease which is included as part of the interests being transferred. The lessee's interest is therefore accounted for in the sale price as directly bearing upon the value of the property.

Contrary to respondents' argument, we disagree that § 39–1–106 requires a separate evaluation of the lessee's leasehold interest or its adjustment in the value of the property for tax purposes. There is nothing in the language of this statute which requires this interpretation.

■ The precise wording of § 39–1–106 is taken from legislation enacted in 1902, Colo.Sess.Laws 1902, ch. 3, § 14 at 46, which remained in effect until amended to its present form in 1957. Colo.Sess.Laws 1957, ch. 267, § 10 at 805. An analysis of this statute and the predecessor from which it was taken clearly indicates that its purpose is to establish a unity rule for the assessment of property; rather than requiring assessment of the various interests in the property, as contended by the respondents, the property is assessed to the owner only, and it "makes no difference" that his ownership or possession is qualified or limited. *See also Board of Commissioners v. Murray*, 71 Colo. 522, 208 P. 472 (1922).

Further, we find no evidence that the comparable sales submitted by petitioner were not the result of arms-length transactions.

Thus, we conclude that the BOAA did not err in considering the evidence of other sales of comparable property within the base period which were similarly subjected to long-term leases.

## II.

■ Respondents next contend that the BOAA erred in relying upon actual rents derived from long-term leases signed outside the base years because such rentals were below current market value. We disagree.

As noted in *Denver v. Lewin*, 106 Colo. 331, 105 P.2d 854 (1940), the rental or net income producing capacity of real property is an important element to be considered in determining the actual or market value of the property for purposes of assessment. It is also an approach required by law. Colo. Const. art. X, § 3(1)(a).

However, citing, *People v. Tax Commission, supra,* and *Crossroads Center, Inc. v. Commissioner of Taxation*, 286 Minn. 440, 176 N.W.2d 530 (1970), respondents argue that rental income should be calculated as the "economic rent" that the property could produce under current conditions as opposed to the actual rent being generated based on the long term lease. Thus, they contend that Regis' calculations, using the income approach, are invalid because they depend upon rents generated from leases entered into in 1967 and 1975, which are outside the statutory base years.

Although these leases were not entered into during the statutory base years required by § 39–1–104(10.2), C.R.S. (1990 Cum.Supp.), the comparisons were made using actual rents received *during the applicable time periods*, as set forth in that statute. Regis' approach focused on actual rents rather than hypothetical rents that could presumably be achieved.

In contrast to the respondents' contention that actual rents should not be given any credence, other jurisdictions have concluded that actual rent deserves some consideration. *South Carolina Tax Commission v. South Carolina Tax Board of Review*, 287 S.C. 415, 339 S.E.2d 131 (App. 1981); *Uniroyal, Inc. v. City of Allen Park*, 138 Mich.App. 156, 360 N.W.2d 156 (1985); *Clarke Associates v. Arlington County*, 235 Va. 624, 369 S.E.2d 414 (1988); *C.A.F. Investment Co. v. Township of Saginaw, supra.* Indeed, it has been held that failure to consider contract rent is error. *Nassif v. Board of Supervisors*, 231 Va. 472, 345 S.E.2d 520 (1986).

We conclude that the actual rent generated from a lease is a valid factor to consider because it affects the property's selling price and fulfills the statutory goal which is to assess property based on its actual value. Thus, we hold that the BOAA properly considered actual rent as well as economic rent. Because the BOAA's assessment is a figure between respondents' and petitioners' proposals, we may conclude that actual and economic rent were considered by it.

## III.

Respondents lastly contend that judicial intervention is required because the BOAA's decision is not supported by substantial evidence. However, we find competent evidence to support the ultimate assessment value, and therefore, the finding will not be disturbed. *See Leavell–Rio Grande Central Associates v. Board of Assessment Appeals*, 753 P.2d 797 (Colo. App.1988); *Hayden v. Board of County Commissioners*, 41 Colo.App. 102, 580 P.2d 830 (1978).

Judgment affirmed.

HUME and ROTHENBERG, JJ., concur.