**CITY AND COUNTY OF DENVER, State of Colorado; Board of Equalization of the City and County of Denver; and Patricia Beer, Manager of Revenue, in her official capacity as ex-officio Assessor of the City and County of Denver, Petitioners,**

v.

**BOARD OF ASSESSMENT APPEALS OF the STATE OF COLORADO; and Regis Jesuit Holding, Inc., Respondents.**

No. 91SC775.

Supreme Court of Colorado, En Banc.

March 8, 1993.

Rehearing Denied March 29, 1993.

Daniel E. Muse, City Atty., Donald E. Wilson, Karen A. Aviles, Asst. City Attys., Denver, for petitioners.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for respondent Bd. of Assessment Appeals.

Jon Slaughter Pelegrin, Lakewood, for respondent Regis Jesuit Holding, Inc.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Board of Assessment Appeals v. City & County of Denver*, 829 P.2d 1319 (Colo.App.1991), affirming a *de novo* valuation by the Board of Assessment Appeals (BOAA) of respondent Regis Jesuit Holding, Inc.'s (Regis) property. The court of appeals held that the BOAA properly considered both actual and market rent in valuing Regis' property. Because the consideration of actual rent in determining the value, for *ad valorem* tax purposes, of real property subject to an existing long-term below-market lease is appropriate, we affirm.

I

The facts in this case are not in dispute. This action involves the 1989 *ad valorem* tax valuation of property located in Denver, Colorado, owned by Regis, and leased since 1965 to the S.S. Kresge Company which operates a K–Mart department store and service garage on the premises. The base term of the lease is for 20 years, and the lessee has the option to renew until the year 2001. The lease payments are $1.50 a square foot plus an override. As a result, the lease payments during the years 1987–88[1] were approximately $2.00 a square foot. It is undisputed that this rate is below the prevailing market rental rates for leases of comparable properties that were entered into in 1987 and 1988. It is also not disputed that at the time this lease

was entered into it was the result of arm's length negotiation. Although the 1965 market rent was $1.38 a square foot, the actual payments that year were $1.75 a square foot.

The Denver assessor valued the property, as of January 1, 1989, at $3,731,000.[2] This value was affirmed by the Denver Board of Equalization (DBOE). Regis appealed to the BOAA which held a hearing *de novo*.

At the BOAA hearing, the assessor's evidence was that he examined real estate data from January 1, 1987 through June 30, 1988, the relevant statutory base period. In evaluating this data, he found no comparable properties which sold free from a long-term lease, and thus, he rejected the market approach.[3] He valued the property using a cost approach[4] at $3,997,400 and at $3,731,000 using the income approach.[5] The assessor's income approach used three allegedly comparable properties for which leases were negotiated during the base period: a K–Mart leased in 1988, a Burlington Coat Factory leased in 1987, and a Service Merchandise Mart leased in 1987. This analysis indicated that $4.00 per square foot for the department store and $7.25 per square foot for the service garage was the appropriate fair market rental for the property. Based on the cost and income approaches the assessor established a value of $3,731,000 for the property. The actual lease rental was not considered in establishing a value for the subject property by the assessor.

Regis' expert witness also considered the market, cost, and income approaches for

1. The relevant base period for 1989 valuations is January 1, 1987, through June 30, 1988. *See* § 39–1–104(10.2), 16B C.R.S. (1989 Supp.).

2. For purposes of clarity, the petitioners collectively shall be referred to either as "Denver" or as "petitioners."

3. The market approach, or comparable sales method, involves an analysis of sales of comparable properties in the market. It has been described as the most accurate method of determining market value. *Board of Assessment Appeals v. E.E. Sonnenberg*, 797 P.2d 27, 31 n. 12 (Colo.1990).

4. The cost approach involves estimating the cost of replacing the improvements to the property, less accrued depreciation. *Id.* at 30 n. 8.

5. The income approach is a common method for calculating the value of commercial property, especially apartment buildings, office buildings and shopping centers. It generally involves calculating the income stream (rent) the property is capable of generating, capitalized to value at a rate typical within the relevant market. *Id.* at 30 n. 8.

valuing the property. In support of his market approach to valuation, he presented three sales of comparable properties which were encumbered by long-term below-market leases. His income approach derived from a capitalization of an average actual rent from the subject store as well as three other K–Mart stores of similar age in the Denver Metropolitan Area. The subject property's actual income and expenses were used as an "indicator" to "simply establish a parameter" for value. Evidence was also presented by Regis' witness on the cost approach to valuation, but was not relied upon by him in valuing the property because, in his opinion, replacement costs are higher than the market value of the property.

The BOAA valued the property at $2,500,000, a value below that urged by the assessor ($3,731,000), and greater than that urged by Regis ($1,316,000). Thus, according to the BOAA, the value of the fee is approximately $20.00 a square foot. In reaching this conclusion the BOAA noted that it reviewed all of the sales presented by both parties but paid "particular attention to sales of similar properties that sold with long-term leases in place." It also opined that the comparable sales presented by Regis "included all interests in property, and reflected the long-term leases as an encumbrance at the time of sale." Denver appealed pursuant to section 39–8–108(2), 16B C.R.S. (1989 Supp.). The court of appeals affirmed the BOAA's valuation, holding that BOAA "properly considered actual rent as well as economic rent." The court of appeals concluded that

> the actual rent generated from a lease is a valid factor to consider because it affects the property's selling price and fulfills the statutory goal which is to assess property based on its actual value. Thus, the BOAA properly considered actual rent as well as economic rent. Because the BOAA's assessment is a figure

between [Regis'] and [Denver's] proposals, we may conclude that actual and economic rent were considered by it.

*Board of Assessment Appeals*, 829 P.2d at 1323.

This case requires us to decide whether any consideration can be given to actual rent which results from a long-term below-market lease encumbering commercial property when determining the actual value of that property for *ad valorem* tax purposes.

## II

The substance of Denver's argument is that actual rental income from the property is extraneous to a determination of the actual value of the property, and thus, the BOAA erred in considering the rental income of the property. Denver urges that although the general rule is that actual rent is a factor in determining value, an exception exists where such rent is wholly misleading. Denver asserts that here such rent is misleading because it does not reflect the value of all interests in the subject property; in particular the "leasehold bonus value" [6] in the below-market lease. Denver claims that this conclusion necessarily follows from the "unit assessment rule."

The unit assessment rule is a rule of property taxation which requires that all estates in a unit of real property be assessed together, and the real estate as an entirety be assessed to the owner of the fee "free of the ownerships of lesser estates such as leasehold interests...." *Alliance Towers v. Stark City Bd. of Rev.*, 37 Ohio St.3d 16, 523 N.E.2d 826, 832 (1988). *See Merrick Holding Corp. v. Board of Assessors*, 45 N.Y.2d 538, 410 N.Y.S.2d 565, 568, 382 N.E.2d 1341, 1344 (1978); *Folsom v. County of Spokane*, 111 Wash.2d 256, 759 P.2d 1196, 1202 (1988) (*Folsom II*). *See also* 84 C.J.S. *Taxation* § 404(a), at 770

---

6. The lessee's possessory interest has a value over and above the actual rent paid in those instances where market rent exceeds the actual rent that the lessee is obligated to pay under the lease. *See* C. Ackerson, *Capitalization Theory and Techniques: Study Guide* 65 (1984); American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 115 (9th ed. 1987). *Cf.* 4 Nichols, *Law of Eminent Domain* 12D–60 (rev. 3d ed. 1989). The parties have phrased this as the "leasehold bonus value."

(1954). It prohibits multiple assessments on multiple taxpayers holding disparate interests in a single piece of property. *Folsom II*, 759 P.2d at 1203. In other words, both the lessor's interest and the lessee's interest are assessed simultaneously, and the property taxed as though it was an unencumbered fee.

Both parties treat the rule as applying; however, it is a question of first impression in Colorado. The court of appeals held that section 39–1–106, 16B C.R.S. (1982), establishes "a unit rule for the assessment of property; rather than requiring assessment of the various interests in the property ... the property is assessed to the owner only, and it 'makes no difference' that his ownership or possession is qualified or limited." *Board of Assessment Appeals*, 829 P.2d at 1323. Section 39–1–106 provides:

> **Partial interests subject to tax.** For purposes of property taxation, it shall make no difference that the use, possession, or ownership of any taxable property is qualified, limited, not the subject of alienation, or the subject of levy or distraint separately from the particular tax derivable therefrom.

§ 39–1–106, 16B C.R.S. (1982).

We agree with the court of appeals conclusion that section 39–1–106 establishes a unit assessment rule. The language of section –106 renders an encumbrance irrelevant for purposes of property taxation; thus, avoiding the distortion of property values caused by fragmenting the leasehold interest from the fee. *See Folsom v. County of Spokane*, 106 Wash.2d 760, 725 P.2d 987, 993 (1986) (*Folsom I*). Other considerations weigh in favor of such a construction. The unit assessment rule taxes all interests in property, no matter how they are divided. *See* § 39–1–102(16), 16B C.R.S. (1982) ("taxable property" defined as all property, real and personal); § 39–1–102(14)(a), 16B C.R.S. (1982) ("real property" defined as "all interests in

land"); Colo. Const. art. X, § 3(1)(a) (property tax levy shall be upon all real and personal property). *See also* J. Youngman, *Defining and Valuing the Base of the Property Tax*, 58 Wash.L.Rev. 713, 725 (1983) (most important and persuasive of the rationales supporting the "unit assessment rule" interprets the tax as a levy against all interests in a given parcel of real property). Additionally, the rule achieves the constitutional mandate of uniformity by assuring horizontal equity between comparable parcels of property.[7] *See Martin v. Liberty County Bd. of Tax Assessors*, 152 Ga.App. 340, 262 S.E.2d 609, 612 (1979) (where lessor chose to receive disproportionate share of rental income in first four years of long term lease, held: "Taxing statutes should not be construed so as to create inequalities between taxpayers who own comparable parcels of substantially the same market value but who, for a variety of reasons, receive disproportionate incomes from the lease thereof."). Finally, the rule avoids the difficult task of ascertaining the individual value of the separate interests, circumventing the administrative nightmare of examining the terms of all leases within the taxing jurisdiction to determine the allocation of the interests in the taxable property.

 The result of applying the unit assessment rule is that although the assessor may initially isolate the interests, the property ultimately must be assessed as a unit. The responsibility of apportioning the tax on this assessment among the various interest holders rests on the private parties who own these interests. Thus, the rule concerns only the final outcome of the assessor's task: the assessor need produce only one assessment. *Cf. Montgomery Ward & Co. v. Sterling*, 185 Colo. 238, 243, 523 P.2d 465, 468 (1974) (in eminent domain law undivided basis rule requires parties to apportion condemnation award after its computation from the whole of the inter-

---

7. Although, as the briefs in this case demonstrate, appeals to uniformity can support any given method of valuation, the constitutional requirement that the property tax levy "shall be uniform upon all real ... property" convinces us that it is similarly situated property that should be treated uniformly, and not similarly situated owners. *See* Colo. Const. art. X, § 3(1)(a) (constitutional mandate that taxes on real and personal property be uniform).

ests involved). In the ordinary case the whole of the property is taxed, and which party bears the taxation burden is not a matter of public concern; rather it is to be resolved as a matter of contract between the landlord and tenant. *See Trimble v. Seattle,* 231 U.S. 683, 689, 34 S.Ct. 218, 219, 58 L.Ed. 435 (1914).

In valuing all the interests in land by a single assessment we follow the weight of authority from jurisdictions that have decided the issue. *See, e.g., Department of Revenue v. Morganwoods Greentree, Inc.,* 341 So.2d 756, 758 (Fla.1976); *Bystrom v. Valencia Center, Inc.,* 432 So.2d 108, 111 (Fla.App.1983); *Merrick Holding Corp. v. Board of Assessors,* 45 N.Y.2d 538, 410 N.Y.S.2d 565, 568, 382 N.E.2d 1341, 1344 (1978); *People ex rel. Gale v. Tax Comm'r of New York,* 17 A.D.2d 225, 233 N.Y.S.2d 501, 507 (1962); *Alliance Towers, Ltd. v. Stark County Bd. of Revision,* 37 Ohio St.3d 16, 523 N.E.2d 826, 832 (1988); *Board of Supervisors v. Nassif,* 223 Va. 400, 290 S.E.2d 822, 824 (1984); *Folsom v. County of Spokane,* 111 Wash.2d 256, 759 P.2d 1196, 1203 (1988). *See generally* 84 C.J.S. *Taxation* § 404(a) at 770 (1954); *Defining and Valuing the Base of the Property Tax,* 58 Wash.L.Rev. at 718–33.

### III

Having concluded that the "owner" of property is responsible for property taxes regardless of how various property rights may have been pledged or exchanged, we now turn to the question of whether it was error for the BOAA to consider actual rental income in valuing the subject property for *ad valorem* tax purposes.

■ Because this appeal was filed by the assessor after June 7, 1989, our review is limited to "alleged procedural errors or errors of law." § 39–8–108(2), 16B C.R.S. (1992 Supp.). The administrative agency, not the reviewing court, has the task of

weighing the evidence and resolving any conflicts. *Board of Assessment Appeals v. E.E. Sonnenberg,* 797 P.2d 27, 34 (Colo. 1990); *Board of Assessment Appeals v. Arlberg Club,* 762 P.2d 146, 151 (Colo. 1988). However, a decision of the BOAA may be set aside if it reflects a failure to abide by the statutory scheme for calculating property tax assessments. *Sonnenberg,* 797 P.2d at 34; *Leavell–Rio Grande Cent. Assocs. v. Board of Assessment Appeals,* 753 P.2d 797, 799 (Colo.App.1988). Accordingly, our review is limited to determining whether the BOAA erred, as a matter of law, in considering the actual rent of the property in arriving at its actual value.

■ With respect to the valuation of property for *ad valorem* tax purposes, section 39–1–103(5)(a) provides:

All real and personal property shall be appraised and the actual value thereof for property tax purposes determined by the assessor.... The actual value of such property ... shall be that value determined by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal....

§ 39–1–103(5)(a), 16B C.R.S. (1992 Supp.). *See* Colo. Const. art. X, § 3(1)(a). Actual value has been defined as the fair market value of the property during the base year period.[8] *Board of Assessment Appeals v. Arlberg Club,* 762 P.2d 146, 151 (Colo. 1988). *See Black's Law Dictionary* 35 (6th ed. 1990) ("actual value," and "market value" may be used as interchangeable terms).

■ Denver asserts that the actual value of the unencumbered fee is equal to the fair market value of the sum of the lessor's and the lessee's interests. Denver argues that to this sum actual rent is irrelevant. Denver concedes that ordinarily the actual rent received will be a factor in determin-

---

8. Section 39–1–104(10.2)(a), 16B C.R.S. (1989 Supp.), requires that the 1989 tax value of property be based on the level value for January 1, 1987, to June 30, 1988. The base year method requires "property valuations be obtained by fixing those valuations to conditions that existed in the specified base year." *Carrara Place Ltd.*

*v. Arapahoe County Bd. of Equalization,* 761 P.2d 197, 201 (Colo.1988). Contrary to Denver's assertions, use of actual rental income does not run afoul of this statutory requirement. Rather, actual rental income may be used for determining the actual value of the property during the base year period.

ing the value of the property—it represents the income the property generates, which under the income approach to valuation is capitalized to determine the value of the property. *See City & County of Denver v. Lewin*, 106 Colo. 331, 338, 105 P.2d 854, 859 (1940). However, Denver urges that an exception should exist for long-term below-market leases because actual rent distorts the value of the property and invites taxpayer-manipulated, artificially depressed property values contrary to the constitutional and statutory mandates that property be assessed at its actual value. *See id.; Leavell–Rio Grande*, 753 P.2d at 800 (inclusion of bargained for rent abatements in commercial leases in valuation of property invites artificially depressed property values).

Denver's concern about the distorting influence of actual rent is misplaced. Although in some circumstances actual rent may be misleading, only in an ideally negotiated lease would actual rent equal market rent. American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 115 (9th ed. 1987). Additionally, where consideration of actual rental income distorts the determination of the actual value of the property, the BOAA is free to place whatever weight it deems appropriate to that figure. *See Wynwood Apartments, Inc. v. Board of Revision*, 59 Ohio St.2d 34, 391 N.E.2d 346 (1979); *Townsend v. Town of Middlebury*, 134 Vt. 438, 365 A.2d 515, 517 (1976) ("any attempted fraud ... would be readily discoverable through resort to the judicial process"). We note that in this case the BOAA did exactly this.[9]

▮▮▮ In fact, the existence of a long term lease may be the predominant factor giving value to the property. We are not certain that a purchaser could be found for this property unless it was burdened with this lease, and this concern has been expressed by other courts that have examined this issue:

> No one could be found to buy this property for what even the owner claims it is worth unless it were 'encumbered' with the K–Mart lease and the assured cash flow that goes with it. This Court cannot legitimately allow local taxing authorities or the Tax Tribunal to evaluate the property as if there is a K–Mart lease encumbrance, which alone makes it saleable at any price that would justify current assessments, and ignore the rent reserved in that lease.

*C.A.F. Inv. Co. v. Township of Saginaw*, 410 Mich. 428, 302 N.W.2d 164, 176 (1981) (Levin, J., concurring). The actual value of improved real estate is arrived at by considering all the various circumstances that affect it. *See Lewin*, 106 Colo. at 338, 105 P.2d at 859. It is axiomatic that the "actual value" of real property for tax assessment purposes is grounded in the marketplace where the customary willing seller/willing buyer concepts are applicable; whether such willing seller and willing buyer place an "actual value" on the property by looking at other sales of comparable properties (the "market approach"), by capitalizing the net income from the property (the "income approach"), or by calculating the cost to replace the improvements less depreciation plus vacant land value (the "cost approach"). To ignore the effect of the lease on the judgment of a purchaser in his estimation of the fair market value of the property is to ignore the mandate that the property is to be valued at its actual value. Moreover, Regis is bound by the

---

**9.** The BOAA valued the property considerably above the valuation suggested by Regis. In its conclusion, the BOAA stated that it "reviewed all of the sales presented by both parties, [but paid] particular attention to sales of similar properties that sold with long-term leases in place." These sales were presented as evidence by Regis in support of its market approach to valuation, and testimony of Regis' expert established that the sales reflected only the value of the landlord's interest, *i.e.*, they did not include the leasehold value held by the lessee. Had the BOAA accepted a valuation of only the landlord's interest, Regis' valuation, then the BOAA's valuation would have been closer to the suggested valuation of Regis, $1,316,138. Instead, the BOAA determined the actual value of the property to be almost double the suggested value of only the landlord's interest. In light of the testimony before the BOAA, and its conclusions, it is clear that the BOAA considered the lessee's interest in determining the actual value of the subject property.

terms of a now below-market lease, encountering the prospect of a fixed income in a future fraught with the potential for unforeseen inflation. "Failure to take notice of [the lessor's] plight unduly penalizes the entrepreneur whose efforts have created the business environment from which communities derive greater property tax revenues." *Folsom*, 725 P.2d at 991. Thus, it follows that both the actual rent and the fair market rent may be used to determine the actual value of the property. *See Board of Supervisors of Fairfax County v. Nassif*, 223 Va. 400, 290 S.E.2d 822, 824–25 (1982) (both actual and economic rent should be considered in valuing a property for taxation purposes); *Oberstein v. Adair County Bd. of Review*, 318 N.W.2d 817, 821 (Iowa 1982) (rental income is some evidence of value of premises independent of existing lease). We do not hold that actual rent is the only factor to be considered in valuing property, nor is it necessarily the predominate factor, only that theoretic market rent is not the exclusive factor to be considered.

Additionally, Denver's concern that owners will seek to avoid the proper valuation of their property by artificially low lease payments is misplaced. First, no reasonable owner of commercial property would choose to reduce rental income by an amount many times greater than could possibly be saved in taxes. *See C.A.F. Inv. Co.*, 302 N.W.2d at 180 (Levin, J., concurring). Second, actual rental income may be inappropriate where it appears that the parties have not reached an arms-length agreement. Finally, we have confidence that in those limited circumstances where manipulation exists, the BOAA will detect it, and value the property according to its actual non-manipulated value.

## IV

Accordingly, because the BOAA may properly consider the actual rental income of property in determining its value, the judgment of the court of appeals is affirmed.

LOHR, J., concurs in part and dissents in part, and MULLARKEY, J., joins in the concurrence and dissent.

SCOTT, J., does not participate.

Justice LOHR concurring in part and dissenting in part:

I concur that provisions of article 1 of Colorado's General Property Tax Act, §§ 39-1-101 to -121, 16B C.R.S. (1982 and 1992 Supp.), contemplate the application of a rule that taxes all the interests in taxable property no matter how they are divided. I further concur that the Board of Assessment Appeals (BOAA) may properly consider "actual" or "contract" rent payable under an existing lease when it determines the actual value of property for *ad valorem* tax purposes. I dissent, however, to the majority's affirmance of the Colorado Court of Appeals' judgment, because the BOAA order affirmed by that court suggests that the BOAA did not apply the proper standards in valuing the property for assessment.

When taxable property is divided into a lessor's estate and a lessee's estate, consistent application of a rule that taxes all the interests in taxable property no matter how they are divided requires that the actual value of both the lessor's and the lessee's estates be considered. The BOAA decision at issue in this case suggests that in determining the actual value for 1989 tax purposes of certain taxable real property the BOAA failed to take into account the value of the lessee's estate. However, the BOAA's findings and conclusions are too compactly stated for me to be certain this is so. I therefore would reverse and remand to the court of appeals with instructions that it direct the BOAA to set forth more fully the manner in which it considered the value of both the lessor's and lessee's estates if it considered the value of both, and if it did not, to conduct such further proceedings as may be necessary to value the property in accordance with this opinion.

## I

The City and County of Denver (Denver) challenges a valuation for 1989 *ad valorem*

tax purposes of certain real property located in Denver. The property is owned by Regis Jesuit Holding, Inc. (Regis) and has been leased since 1965 to the S.S. Kresge Company which operates a K–Mart department store and service garage on the premises. The base term of the lease is twenty years, but the lessee has the option to renew until the year 2001. The lease was the result of arms-length negotiations, but prevailing market rental rates for leases of comparable properties executed in 1987 and 1988[1] were significantly higher than the actual contract rent under the lease.

A Denver assessor initially valued the property at $3,731,000. This value was affirmed by the Denver Board of Equalization, and Regis sought a *de novo* review before the BOAA. In defending its value of $3,731,000, Denver relied in part on an income approach to valuation[2] that ignored the actual contract rent under the lease in favor of prevailing, but higher, market rental rates for leases executed in 1987 and 1988. Regis, on the other hand, urged that the income approach to valuation should be based partly on the average, actual contract rent under the lease.

After a hearing, the BOAA issued findings of fact and concluded that the value of the property was $2,500,000, a figure less than that urged by Denver, but greater than that proposed by Regis. The court of appeals affirmed in *Board of Assessment Appeals v. City and County of Denver*, 829 P.2d 1319 (Colo.App.1991). Denver now argues that both the lessor's and the lessee's estate must be valued for property tax purposes, that relying on actual contract rent from a below-market lease to determine the value of the property does not value the lessee's estate, and that the

appropriate method for valuing property with a long-term below-market lease under the income approach is to use currently prevailing market (sometimes called "economic") rent, rather than the actual contract rent. Regis, on the other hand, argues that even when property is subject to a long-term below-market lease it is appropriate for the BOAA to consider both actual contract rent and market rent.

## II

Under Colorado's General Property Tax Act, all interests in taxable property are taxed no matter how they are divided. Maj. op. at 359; *see* §§ 39–1–102(16) and –106, 16B C.R.S. (1982). However, this does not mean that there are to be multiple assessments on multiple taxpayers holding disparate interests in a single piece of land. Rather, the property ultimately must be assessed as a unit to a single taxpayer, and the manner of sharing the burden of the property tax among the holders of estates in the taxable property is a matter to be resolved by contract. Maj. op. at 359–60; *see Oberstein v. Adair County Bd. of Review*, 318 N.W.2d 817, 820–21 (Iowa App. 1982); *Folsom v. County of Spokane*, 111 Wash.2d 256, 759 P.2d 1196, 1202–03 (1988). When, as in this case, taxable property is divided into a lessor's and a lessee's estate, it is necessary that the value of both estates be considered in arriving at the value, for *ad valorem* tax purposes, of all the interests in the taxable property. *Valencia Center, Inc. v. Bystrom*, 543 So.2d 214, 217 (Fla.1989); *Oberstein*, 318 N.W.2d at 820–21; *Yadco, Inc. v. Yankton County*, 89 S.D. 651, 237 N.W.2d 665, 668 (1975); *Folsom*, 759 P.2d at 1201–02.[3]

1. As noted by the majority, the relevant base period for 1989 valuations is January 1, 1987, through June 30, 1988. *See* maj. op. at 357 n. 1, citing § 39–1–104(10.2), 16B C.R.S. (1989 Supp.).

2. The actual value of property for *ad valorem* tax purposes must be determined "by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal." § 39–1–103(5)(a), 16B C.R.S. (1992 Supp.).

3. In this connection, the Washington Supreme Court has observed that

"[a]n estimation of the value of property subject to a lease focuses upon two major interests: (1) the interest of the lessor who owns the fee, and (2) the interest of the lessee occupying the leasehold. Further analyzed, the lessor's fee interest consists of (a) the right to receive contract rent, (b) the right of reversion, and (c) any right he might have to improvements at the end of the lease. The lessee's leasehold interest consists of (a) the right to occupy the leasehold, (b) the right to the

**364**

The manner of calculating the value of both the lessor's and lessee's estates in any given case is not, however, a matter for this court to determine. In particular, although both actual contract rent and market rent may be relevant, the manner in which each is to be brought into play in determining the actual value of all interests in the property is a matter for experts in appraisal to decide applying accepted appraisal principles.[4] Our role as a reviewing court includes making certain that the BOAA abides by the statutory scheme for calculating property tax assessments. *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27, 34 (Colo.1990). Only if the BOAA took into account the value of both the lessor's and the lessee's estates in the present case did it abide by the statutory scheme.

My reading of the BOAA's decision suggests that it did not take into account the value of the lessee's interest, but its findings and conclusions are too compactly stated for me to be certain this is so. For example, the BOAA nowhere states that it took into account the value of the lessee's interest. Moreover, Regis presented for the consideration of the BOAA "four comparable sales" to which the BOAA says it paid "particular attention," but these sales appear from the record to have been sales of only lessors' estates. I would therefore reverse and remand to the court of appeals with instructions that it direct the BOAA to set forth more fully the manner in which it considered the value of both the lessor's and lessee's estates if it considered the value of both, and if it did not, to conduct such further proceedings as may be necessary to value the property in accordance with this opinion. In so doing, I agree with the majority that the BOAA may consider both actual contract rent and market rent, maj. op. at 362, and reaffirm that the decision of the BOAA may not be set aside if it is supported by competent evidence. *E.E. Sonnenberg & Sons,* 797 P.2d at 34.

MULLARKEY, J., joins in this concurrence and dissent.

difference between contract rent and higher market rent, and (c) any interest he might have in any improvements to the leasehold." *Folsom,* 759 P.2d at 1202 (quoting *Folsom v. County of Spokane,* 106 Wash.2d 760, 725 P.2d 987, 989–90 (citing Solis–Cohen, Jr., *Appraisal of Leaseholds, in Encyclopedia of Real Estate Appraising* 465, 473, 476–77 (1959))).

4. In general, a contract rent in excess of market rent tends to increase the value of the lessor's estate and decrease the value of the lessee's estate while a contract rent below market rent tends to have the opposite effect. *See* American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 114–15 (9th ed. 1987).